XAVIER BECERRA
Attorney General of California
DANIELLE F. O'BANNON
Supervising Deputy Attorney General
MANEESH SHARMA
Deputy Attorney General
State Bar No. 280084
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5553
  Fax:  (415) 703-1234
  E-mail:  Maneesh.Sharma@doj.ca.gov
*Attorneys for unserved Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JAMES MILLNER,**<br><br>                       Plaintiff,<br><br>  v.<br><br>**DR. DILEO, et al.,**<br><br>                      Defendants. | Case No. 1:17-cv-00507-SAB (PC)<br><br>**UNSERVED DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:     The Honorable Stanley A. Boone<br>Trial Date:  NA<br>Action Filed: April 11, 2017 |

## INTRODUCTION

Plaintiff James Millner, a California state prison inmate, has received multiple surgeries to repair a fracture to his left wrist. These previous surgeries have not fully repaired Plaintiff's wrist, in part due to Plaintiff's habit of mutilating his surgical site after previous surgeries. Another surgery and subsequent self-mutilation could lead to an infection that further damages Plaintiff's wrist and reduces its functioning. As a result, prison officials concluded that another surgery would not medically benefit Plaintiff and that a conservative course of treatment should be pursued.

Plaintiff now seeks the extraordinary remedy of a preliminary injunction ordering that unserved defendants approve an immediate surgery for his wrist. But Plaintiff has not demonstrated a medical necessity for such surgery, much less any imminent deterioration in his medical condition that might otherwise warrant such an order. Moreover, a mandatory preliminary injunction would alter the status quo, not preserve it, while Plaintiff pursues his legal claims. There is no basis for granting a mandatory preliminary injunction here—particularly when the injunction would irreversibly grant Plaintiff the relief sought through this lawsuit.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (per curiam). In seeking one, Plaintiff must demonstrate that she is likely to succeed on the merits of her claims, that she is likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Moreover, a *mandatory* preliminary injunction of the sort sought here "goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal citation and brackets omitted). "When a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party,'" *Stanley v. Univ. of Southern Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994), and

1

Unserved Defs.' Opp'n Pl.'s Mot. Prelim. Inj.  (1:17-cv-00507-SAB (PC))

"unless extreme or very serious damage will result," *Marlyn*, 571 F.3d at 879.  *See also Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) ("'mandatory preliminary relief' is subject to heightened scrutiny").

Finally, because this is a prisoner conditions case, the Prison Litigation Reform Act's standards for injunctive relief apply.  18 U.S.C. § 3626(a)(1)(A).  Under the PLRA, "no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum."  *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000).  Courts must respect principles of comity and "give substantial weight to any adverse impact on public safety or the operation of the criminal justice system caused by the preliminary relief."  18 U.S.C. § 3626(a)(2); *Nelson v. Campbell*, 541 U.S. 637, 650 (2004).

**PROCEDURAL HISTORY**

Plaintiff filed his complaint on April 11, 2017.  (ECF No. 1.)  On May 8, 2017, Plaintiff filed a motion for preliminary injunction.  (ECF No. 7.)  On September 12, 2017, the Court screened Plaintiff's complaint, dismissing some claims but finding claims against Drs. Dileo, Ulit, Spaeth, and the Kern Valley State Prison Chief Medical Officer cognizable.  (ECF No. 8 at 8.)  The Court did not order service on these individuals, but rather ordered Plaintiff, within thirty days, to file an amended complaint to cure the deficiencies in his dismissed claims or notify the Court in writing if he was willing to proceed on the cognizable claims only.  (*Id.* at 9.)  On September 13, 2017, the Court issued an order directing the California Attorney General's Office to make a special appearance and respond to Plaintiff's request for immediate injunctive relief.[1]  (ECF No. 9.)

//

//

---

[1] By appearing as ordered, the Attorney General's Office does not accept service on behalf of any unserved Defendants, or waive any objection or defense that could be raised regarding service or jurisdiction.

2

Unserved Defs.' Opp'n Pl.'s Mot. Prelim. Inj.  (1:17-cv-00507-SAB (PC))

**STATEMENT OF FACTS**[2]

Plaintiff alleges that he broke his wrist on July 28, 2013. (Compl. ECF No. 1 at 9.) Between August 2013 and December 2015, Plaintiff received at least four surgeries on his wrist, on September 26, 2013, October 9, 2013, October 24, 2013, and December 2, 2015. (*Id.* at 10-11.) Following the December 2, 2015 surgery, Plaintiff received an x-ray on December 10, 2015, that showed that the fractures were not healed and that there was an abnormal lucency surrounding the proximal most support screw which "may indicate hardware loosening." (Pl. Mot. Prelim. Inj., ECF No. 7 at 9.) Plaintiff alleges that on June 25, 2016, Dr. Armory recommended another surgery on Plaintiff's wrist. (*Id.* at 6.)

On June 28, 2016, Physician Assistant Ogbuehi and Dr. Ulit submitted a Physician Request for Services form, for Plaintiff to receive another surgery on his wrist. (Declaration of M. Spaeth Supporting Unserved Defendants' Response to Motion for Preliminary Injunction (Spaeth Decl.) at ¶ 4.) The request was marked routine, as opposed to emergent or urgent. (*Id.*) The request also noted that Plaintiff has a history of self-mutilating his wound sites following surgery. (*Id.*) The request was deferred to the Medical Authorization Review committee and was denied on July 7, 2016 because the committee determined that the surgery would not medically benefit Plaintiff. (*Id.* ¶ 5, Ex. A.) The committee's decision was based on Plaintiff's history of unsuccessful surgeries and medical records showing that there appeared to be little to no impact on Plaintiff's activities of daily living. (*Id.*, Ex. A.) On August 3, 2016, PA Ogbuehi informed Plaintiff of the MAR committee's decision. (*Id.*)

Plaintiff continued to receive medical care for his wrist and other conditions. (*Id.* at ¶¶ 7-9, Ex. B-D.) On March 16, 2017, Plaintiff was seen by Dr. Ulit. (*Id.* at ¶ 8, Ex. C.) Dr. Ulit noted that Plaintiff complained of pain in his left wrist, but that his wrist was functional and able to move his fingers without problem. (*Id.*) On June 6, 2017, Plaintiff was seen by Dr. Ulit. (*Id.* at ¶

---

[2] To the extent these facts are derived from Plaintiff's Complaint and Motion for Preliminary Injunction, unserved Defendants set them forth solely for purposes of this motion, without conceding their accuracy or veracity.

3

Unserved Defs.' Opp'n Pl.'s Mot. Prelim. Inj.  (1:17-cv-00507-SAB (PC))

9, Ex. D.) Dr. Ulit again noted that Plaintiff did not receive surgery due to his noncompliance with care, and that his wrist is functional despite deformity. (*Id.*)

## ARGUMENT

### I. PLAINTIFF HAS NOT SHOWN THAT THE EXTRAORDINARY AND DISFAVORED REMEDY OF MANDATORY INJUNCTIVE RELIEF IS WARRANTED.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). It is never awarded "as of right," but in each case, "'courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (citation omitted).

To prevail on a motion for a preliminary injunction, a plaintiff must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the plaintiff in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Id.* (citation omitted); *Am. Trucking Ass'n*, *Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Injunctive relief is "to be used sparingly, and only in a clear and plain case." *Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001). Moreover, while a "prohibitory injunction" prohibits a party from taking action and preserves the status quo, a mandatory injunction orders a responsible party to "take action." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014). A mandatory injunction "goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citation omitted) When a party seeks a mandatory injunction, relief should not be granted "in doubtful cases." *Id.* "[T]he district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citation omitted).

As the Ninth Circuit has recognized, the Prison Litigation Reform Act (PLRA) conscribes courts in granting injunctive relief against prison officials. 18 U.S.C. § 3626; *See Id.* at 1129. "Under the PLRA, the court must find that the prospective relief is 'narrowly drawn, extends no

4

further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the Federal right' before granting injunctive relief." *Id.* at 1128-29 (quoting 18 U.S.C. § 3626(a)(1)). And, the court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* at 1129 (citing 18 U.S.C. § 3626(a)(1)).

**A.  Plaintiff is unlikely to succeed on the merits of his Eighth Amendment Claim because unserved defendants' decision to deny surgery was based on their medical opinion that further surgery would not benefit Plaintiff.**

To maintain an Eighth Amendment medical claim, an inmate must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference means that a doctor knew of and disregarded an excessive risk to the inmate's health, that the doctor knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and the doctor drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Because deliberate indifference is a "high legal standard," even a doctor's grossly negligent diagnosis or treatment of a medical condition is insufficient to establish an Eighth Amendment violation. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004); *see Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."). Nor does a difference of medical opinion between prison physicians and other medical providers establish deliberate indifference to serious medical needs. *Toguchi,* 391 F.3d at 1057. Moreover, because Plaintiff is seeking a mandatory injunction, Plaintiff must make "a [c]lear [s]howing of a [p]robability of [s]uccess on the [m]erits." *Stanley*, 13 F.3d a 1320.

Here, the available facts demonstrate that the decision to deny Plaintiff's most recent request for surgery is, at most, a difference of medical opinion on whether further surgery would benefit Plaintiff. Following Plaintiff's initial injury, Plaintiff received multiple surgeries on his wrist. (ECF No. 1 at 10-11.) And records from Plaintiff's medical files show that Plaintiff repeatedly self-mutilated his surgical wounds. (Spaeth Decl. at ¶¶ 4, 6-9, Exs. A-D.) This self-mutilation may be the reason that Plaintiff's previous surgeries have not healed properly. (*Id.* at 8,

5

Unserved Defs.' Opp'n Pl.'s Mot. Prelim. Inj.  (1:17-cv-00507-SAB (PC))

1  Ex. D.) And Plaintiff's prison physicians may justifiably be concerned that another surgery and
2  Plaintiff's non-compliance with follow up care could lead to an infection and further injury or
3  damage to Plaintiff's wrist. (*Id.* at ¶ 5.) Moreover, Plaintiff's current status does not appear to be
4  impacting his activities of daily living, and his wrist and finger appear functional. (*Id.* at ¶¶ 6-9,
5  Exs. A-D.) As a result, Plaintiff cannot show that the law and facts clearly favor his claim.

        **B.**    **Plaintiff has not demonstrated the likelihood of irreparable harm because there is little to no indication that Plaintiffs' wrist is worsening and Plaintiff is continuing to receive treatment and monitoring.**

8      Plaintiff contends that he is threatened with irreparable harm because of the nature of his
9  injury and the risk of loose hardware and screws. (ECF No. 7 at 3.) These claims are rebutted by
10 Plaintiff's medical records. Notably, the x-ray results that Plaintiff attaches to his complaint are
11 inconclusive, noting that the abnormal lucency seen on the x-ray "*may* indicate hardware
12 loosening." (*Id.* at 9 (emphasis added).) Moreover, there is no indication, aside from Plaintiff's
13 own statements, that this hardware loosening, if any, is at immediate risk for worsening and
14 causing injury to Plaintiff. To the contrary, the June 28, 2015 request for surgery was marked
15 routine, rather than urgent or emergent. (Spaeth Decl. Ex. A.) Further, Plaintiff is seen regularly
16 for his medical conditions, including ongoing care for his wrist. (*Id.* at ¶¶ 7-9 (describing medical
17 visits on August 3, 2016, March 16, 2017, and June 6, 2017).) During the most recent June 6,
18 2017 visit, it did not appear that Plaintiff's wrist was worsening or showing signs of infection.
19 (*See id.* ¶ 9, Ex. D.)

20     Plaintiff also argues that the continuing deprivation of Constitutional rights constitutes
21 irreparable harm as a matter of law. (ECF No. 7 at 2-3.) The majority of cases Plaintiff cites,
22 however, note that this presumption applies to violations of First Amendment rights, which
23 cannot be adequately compensated monetarily. *See, e.g. Jolly v. Coughlin*, 76 F.3d 468, 482 (2d
24 Cir. 1996) (distinguishing prisoner's First and Eighth Amendment claims for purpose of
25 irreparable harm analysis); *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) (citing *Elrod v.
26 Burns*, 427 US 274, 373 (1976) for proposition that First Amendment infringement constitutes
27 irreparable injury). The cases that apply this presumption to Eighth Amendment claims are non-
28 precedential out-of-circuit authority and, moreover, also provide a factual basis for their finding

6

or irreparable injury.  *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (citing to evidence of overcrowding to justify finding of irreparable harm from closing facility and transfer of prisoners); *Phillips v. Michigan Dep't of Corr.*, 731 F. Supp. 792, 800 (W.D. Mich. 1990) (citing to evidence that discontinuing medication would injure prisoner).  As explained above, Plaintiff has not provided a sufficient factual basis to show that he faces irreparable injury from allowing prison physicians to continue with their conservative treatment plan while this case proceeds.

> **C.  The balance of equities weighs against the requested injunction because unserved defendants should not be required to approve a surgery that could possibly harm Plaintiff.**

The last two elements that Plaintiff must prove are that the balance of equities tips in his favor and that an injunction is in the public interest.  *Winter*, 555 U.S. at 22.  However, since the requested injunction is limited to Plaintiff, "public interest should be at most a neutral factor in the analysis." *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931 (9th Cir. 2003).  If considered by the Court, public interest in providing medical care to prisoners would not be advanced by ordering an unnecessary and possibly harmful surgery for Plaintiff.  Similarly, Plaintiff cannot show that a mandatory injunction for a surgery that could further harm his wrist tips in his favor.  Prison officials have a duty to "provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  And "[o]ne of the primary teachings of the Hippocratic School is embodied in the maxim 'first do no harm.'  The phrase serves as a guiding principle for physicians who are debating the use of an intervention that carries an obvious risk of harm but a less certain chance of benefit." *Mitchell v. Washington*, 818 F.3d 436, 447 (9th Cir. 2016).  Here, prison physicians have determined that pursuing a conservative course of treatment for the Plaintiff's wrist, rather than a successive surgery that could cause further harm, is in Plaintiff's medical interest.  (*See* Spaeth Decl., Ex. A.)  Forcing unserved defendants to approve a surgery based on the limited set of facts available at the preliminary injunction stage would unnecessarily usurp unserved defendants' medical conclusion.

## CONCLUSION

The record before the Court demonstrates that prison officials' decision to pursue a conservative, non-surgical course of treatment is motivated by their professional mandate to do

7

Unserved Defs.' Opp'n Pl.'s Mot. Prelim. Inj.  (1:17-cv-00507-SAB (PC))

no harm, rather than deliberate indifference to Plaintiff's medical needs.  And Plaintiff is continuing to receive regular care and monitoring for his wrist, as well as other medical conditions.  Plaintiff's request for a mandatory injunction overturning the status quo, and irreversibly granting him nearly the entire relief requested through this case, should therefore be denied.  Plaintiff has not shown that the law and facts are clearly in his favor, that he is at risk for irreparable harm, and that balance of the equities weigh in his favor.

Dated:  September 26, 2017                              Respectfully Submitted,

                                                        XAVIER BECERRA
                                                        Attorney General of California
                                                        DANIELLE F. O'BANNON
                                                        Supervising Deputy Attorney General


                                                        */s/ Maneesh Sharma*
                                                        MANEESH SHARMA
                                                        Deputy Attorney General
                                                        *Attorneys for unserved Defendants*

8

Unserved Defs.' Opp'n Pl.'s Mot. Prelim. Inj.  (1:17-cv-00507-SAB (PC))

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **Millner v. Dileo et al**
No.: **1:17-cv-00507-SAB (PC)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On September 26, 2017, I served the attached:

**UNSERVED DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

**DECLARATION OF M. SPAETH IN SUPPORT OF UNSERVED DEFENDANTS
RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**James W. Millner
(F-83475)
Kern Valley State Prison
P.O. Box 5103
Delano, CA 93216-6000**
*Pro Se*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 26, 2017, at San Francisco, California.

|  L. Santos  |  /s/ L. Santos  |
|:---:|:---:|
| Declarant | Signature |