# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLNER,<br><br>    Plaintiff,<br><br>v.<br><br>DR. DILEO, et al.,<br><br>    Defendants. | Case No. 1:17-cv-00507-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>[ECF Nos. 8, 12] |

Plaintiff James Millner is a state prisoner appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983. On April 14, 2017, Plaintiff consented to magistrate judge jurisdiction. (ECF No. 6.) Defendants have not yet consented or declined to United States Magistrate Judge jurisdiction.

On September 11, 2017, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B), and found that it stated a cognizable claim against Defendants Dileo, Ulit, Spaeth, and the Chief Medical Officer for deliberate indifference in violation of the Eighth Amendment based on his wrist injury. (ECF No. 8.) Following Plaintiff's notification of intent to proceed only on the claims found to be cognizable, (ECF No. 11), on October 3, 2017, the Court dismissed all other claims and defendants for the failure to state a cognizable claim for relief, (ECF No. 12). The Court indicated that jurisdiction existed under 28

1

U.S.C. § 636(c) based on the fact that Plaintiff had consented to Magistrate Judge jurisdiction and no other parties had yet appeared. (See id. at 1.)

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court did not have jurisdiction to dismiss the claims described in its October 3, 2017 order.

Based upon the foregoing, the undersigned will now recommend to the District Judge that this case continue to proceed only on Plaintiff's cognizable claims, and that all other claims and defendants described below be dismissed, for the reasons explained herein.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be

facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is housed at Kern Valley State Prison ("KVSP"). On July 13, 2013, Plaintiff broke four bones in his foot during an incident with three correctional officers. (Compl. ¶ 9.) Plaintiff later ended up attempting suicide and was placed in a Mental Health Crisis Bed at High Desert State Prison ("HDSP"). (Compl. ¶ 9.)

On July 28, 2013, while at HDSP, Plaintiff had a syncopal episode and fell and broke his wrist. (Compl. ¶ 9.) Plaintiff was taken to Banner Lassen Medical Center where he was diagnosed with a severely displaced fracture and was told that it would heal in 4 to 6 weeks. (Compl. ¶ 9.) On July 31, 2013, Plaintiff was transferred back to KVSP with no crutches or medical appliance for his wrist. (Compl. ¶ 10.) On this same day, Plaintiff was seen by medical and referred to see a doctor. (Compl. ¶ 10.)

Plaintiff was seen by Dr. Dileo on August 2, 2013. (Compl. ¶ 11.) Dr. Dileo did not administer any treatment for Plaintiff's foot or wrist, but referred Plaintiff to see a specialist. (Compl. ¶ 11.) On August 16, 2013, Plaintiff was seen by Dr. Smith, who diagnosed Plaintiff with three broken metatarsals in his foot and a severely displaced distal radius fracture of his wrist noting that the fracture was displaced and angulated. (Compl. ¶ 12.) Dr. Smith recommended surgery as soon as possible. (Compl. ¶ 12.) On this same day, Dr. Dileo referred Plaintiff for a new ortho consult rather than sending Plaintiff for immediate surgery. (Compl. ¶ 12.) Dr. Dileo also prescribed Plaintiff an after-surgery boot for his foot. (Compl. ¶ 12.)

///

On August 23, 2013, Plaintiff was seen by Dr. Alade who noted that Plaintiff had fallen and his wrist had remained untreated. (Compl. ¶ 13.) Dr. Alade recommended that Plaintiff urgently get scheduled for a surgical procedure and told Plaintiff that delay in receiving treatment for the fracture could result in "disability, re-stiffness and [being] unable to appropriately reduce the fracture and anatomical position." (Compl. ¶ 13.) On August 27, 2017, Dr. Dileo approved Plaintiff for surgery noting there was no reason to delay surgery. (Compl. ¶ 14.)

On September 5, 2013, Plaintiff saw Dr. Alade who again recommended surgery. (Compl. ¶ 15.) On September 10, 2013, Dr. Dileo set Plaintiff's surgery for September 26, 2013, which was nearly eight weeks after Plaintiff fell and broke his wrist. (Compl. ¶ 15.) Plaintiff had surgery on his wrist on September 26, 2013. (Compl. ¶ 15.)

Plaintiff fell again and developed an infection in his wrist. (Compl¶ 16.) On October 9, 2013, Plaintiff was diagnosed with a comminuted of the distal radius with dorsal angulation and degenerative changes were noted. (Compl. ¶ 16.) Plaintiff had a second surgery on October 24, 2013. (Compl. ¶ 16.) On December 10, 2013, Dr. Dileo recommended a third surgery for Plaintiff. (Compl. ¶ 16.)

On June 4, 2014, Dr. Smith recommended a shortening osteotohis which Plaintiff has not yet undergone. (Compl. ¶ 17.) Plaintiff alleges that he had to endure four surgeries due to Dr. Dileo allowing his fracture to heal displaced. (Compl. ¶ 17.)

On June 6, 2014, Plaintiff saw Dr. Manasrah concerning the fractures to his foot. (Compl. ¶ 17.) On June 12, 2014, Dr. Manasrah noted that Plaintiff's foot was supposed to be addressed by was not. (Compl. ¶ 17.) Dr. Manasrah sent Plaintiff to see Dr. Smith on June 18, 2014. (Compl. ¶ 17.) Dr. Smith noted that at least one of Plaintiff's metatarsals was still healing. (Compl. ¶ 17.)

On July 29, 2014, Dr. Alade evaluated Plaintiff's wrist and noted that it was severely displaced and that Plaintiff still had a broken metatarsal in his foot more than a year after his injury. (Compl. 17.)

///

On December 2, 2015, Plaintiff underwent surgery to redo radial osteotohis with iliac crest bone grafting and plating in his wrist by Dr. Amory. (Compl. ¶ 18.) Plaintiff had an x-ray of his wrist on December 10, 2015, which showed there was an abnormal lucency surrounding the proximal most support screw and this was determined to indicate hardware loosening and there was a loose proximal support screw. (Compl. ¶ 18.) After the cast was removed from his wrist, Plaintiff was prescribed a wrist brace with a stabilizing bar and bone growth stimulator. (Compl. ¶ 19.) Plaintiff received a wrist brace with the stabilizing bar removed and no bone growth stimulator. (Compl. ¶ 19.)

Plaintiff was seen by R.N. Relevante who refused to allow Plaintiff to use the stabilizing bar stating that if Plaintiff wanted his wrist to be stabilized Dr. Amory would have put it in a cast. (Compl. ¶ 19.) Plaintiff alleges that due to the wrist not receiving proper stabilization and the loose hardware and lack of bone growth stimulator the bone graft did not take. (Compl. ¶ 19.) When Plaintiff last saw Dr. Amory, he said the callus was disappearing from the graft and there was a void between the graft and the bone. (Compl. ¶ 19.)

On August 3, 2016, Plaintiff was seen by Dr. Cogbuehi who told Plaintiff that the Medical Review Board, which was chaired by the Chief Medical Examiner, had denied surgery which was recommended by Dr. Amory on June 25, 2016. (Compl. ¶ 20.) Plaintiff states that the denial of the surgery he is permanently disabled and disfigured. (Compl. ¶ 20.)

Plaintiff filed an administrative appeal and was seen by Dr. Ulit on August 26, 2016. (Compl. ¶ 21.) After reviewing Plaintiff's medical history, Dr. Ulit denied Plaintiff's surgery on September 8, 2016, despite the recommendation of another doctor and that Plaintiff's hardware is loosening. (Compl. ¶ 21.)

Plaintiff appealed the denial of surgery to the second level and Dr. Spaeth agreed with Dr. Ulit and Plaintiff's surgery was again denied. (Compl. ¶ 22.)

Plaintiff alleges that after multiple surgeries his wrist is still crooked, and he suffers from pain and loss of function causing him to be unable to use his hand for everyday functions. (Compl. ¶ 13.) Plaintiff brings this action against Dr. Dileo, R.N. Relevante, the Chief Medical Officer, Dr. Ulit, and Dr. Spaeth in their individual and official capacities alleging deliberate

indifference to his serious medical needs. (Compl. ¶¶ 25-31.) Plaintiff seeks an injunction requiring the defendants to provide him with immediate surgery and monetary damages.

## III.

## DISCUSSION

### A. Official Capacity Claims

Plaintiff brings this action against the defendants in their individual and official capacities. A suit brought against prison officials in their official capacity is generally equivalent to a suit against the prison itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, prison officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." Id. (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010). To prove liability for an action policy the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." Waggy, 594 F.3d at 713.

Plaintiff's complaint is devoid of any factual allegations that the violations at issue in this action were the result of a policy or custom of the CDCR or KVSP. Plaintiff fails to state an official capacity claim against any named Defendant. Therefore, this action should proceed against the defendants in their individual capacities.

### B. Deliberate Indifference

Plaintiff alleges that the actions of the defendants demonstrated deliberate indifference in violation of the Eighth Amendment. While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v.

Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm, 680 F.3d at 1122; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

To state a claim, Plaintiff must plead (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

1. Broken Foot

Plaintiff alleges that Dr. Dileo was deliberately indifferent by failing to provide him with medical treatment for his broken foot from August 2, 2013, until Dr. Dileo prescribed an after-surgery boot on August 16, 2013. However, Plaintiff broke his foot on July 13, 2013, and was transferred to HDSP where he received treatment until he was transferred back to KVSP on July 31, 2013. Dr. Dileo saw Plaintiff on August 2, 2013, and referred Plaintiff to a specialist. Plaintiff was seen two weeks later. Dr. Dileo prescribed Plaintiff with an after-surgery boot on August 16, 2013, the day that Plaintiff was seen by Dr. Smith and diagnosed with broken metatarsals. Plaintiff has alleged no facts by which the Court can infer that Defendant Dileo was aware that Plaintiff needed treatment for his foot on August 2 and failed to adequately respond. Plaintiff has failed to state a cognizable claim against Dr. Dileo based on his broken foot.

2. Broken Wrist

**a. Drs. Dileo, Ulit, Spaeth, and Chief Medical Officer**

At the pleading stage, Plaintiff's allegations are sufficient to state a claim for deliberate indifference against Dr. Dileo for the delay in Plaintiff's wrist surgery from August 2, 2013, until September 26, 2013, which he alleges caused permanent injury to his wrist.

///

7

Further, liberally construed, Plaintiff's allegation that Drs. Ulit, Spaeth, and the Chief Medical Officer have denied him surgery that was recommended by Dr. Amory on June 25, 2016, is sufficient to state a claim for deliberate indifference.

    **b.    R.N. Relevante**

Plaintiff alleges that R.N. Relevante was deliberately indifferent when she refused to provide Plaintiff with a stabilizing bar for his wrist brace and bone growth stimulator. However, Plaintiff did not allege that he informed R.N. Relevante that he needed a bone growth stimulator, nor that it would be within her authority as an R.N. to change the prescription ordered. Additionally, Plaintiff alleges that R.N. Relevante stated that if he needed his wrist stabilized Dr. Amory would have placed his wrist in a cast.

Plaintiff's allegations fail to demonstrate that R.N. Relevante knew that Plaintiff had a serious medical need and failed to adequately respond. Plaintiff has failed to state a cognizable claim against R.N. Relevante.

## IV.

## RECOMMENDATIONS

For the reasons explained above, IT IS HEREBY RECOMMENDED that:

1. This action proceed only on Plaintiff's claim against Defendants Dileo, Ulit, Spaeth, and the Chief Medical Officer for deliberate indifference in violation of the Eighth Amendment based on his wrist injury; and

2. All other claims and defendants be dismissed for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**December 1, 2017**__

                                                UNITED STATES MAGISTRATE JUDGE