# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JAMES W. MILLNER,

        Plaintiff,

    v.

DR. DILEO, et al.,

        Defendants.

Case No.: 1:17-cv-00507-LJO-SAB (PC)

ORDER STRIKING PLAINTIFF'S SUR-REPLY
[ECF No. 47]

FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON NON-EXHAUSTION GROUNDS
[ECF No. 44]

**THIRTY-DAY DEADLINE**

Plaintiff James W. Millner is appearing *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Currently before the Court is Defendants' motion for summary judgment on Plaintiff's claim against Defendant DiLeo due to non-exhaustion of available administrative remedies, filed August 9, 2018. (ECF No. 44.)

## I.

## RELEVANT BACKGROUND

This action is proceeding on Plaintiff's claim against Defendants DiLeo, Ulit, and Spaeth, in their individual capacity, for deliberate indifference in violation of the Eighth Amendment,

based on his wrist injury.  (Compl., ECF No. 1.)  Defendants filed an Answer to the Complaint on April 5, 2018.  (ECF No. 34.)  A discovery and scheduling order issued on April 6, 2018. (ECF No. 35.)

As previously stated, on August 9, 2018, Defendants filed the instant motion.  (ECF No. 44.)  Plaintiff filed an opposition on August 29, 2018.  (ECF No. 45.)  Defendants filed a reply on September 5, 2018.  (ECF No. 46.)

Plaintiff filed a "reply to Defendants reply," on September 13, 2018.  (ECF No. 47.)  The Court construes that filing as a sur-reply.  Regarding the sur-reply, no further briefing on Defendants' motion for summary judgment was permitted absent leave of court.  Local Rule 230(l).  Plaintiff did not seek leave to file any sur-reply, the Court did not order that any sur-reply be filed, and the Court does not find a sur-reply necessary.  Therefore, Plaintiff's sur-reply will be stricken.

The motion is otherwise deemed submitted.  Local Rule 230(l).

## II.

## LEGAL STANDARD

### A.    Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."  42 U.S.C. § 1997e(a); see Ross v. Blake, —U.S.—,136 S. Ct. 1850, 1856, 195 L. Ed. 2d. 117 (2016) ("An inmate need exhaust only such administrative remedies that are 'available.'").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and

1  unexhausted claims may not be brought to court, <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007) (citing
2  <u>Porter</u>, 534 U.S. at 524).

3      The failure to exhaust is an affirmative defense, and the defendants bear the burden of
4  raising and proving the absence of exhaustion.  <u>Jones</u>, 549 U.S. at 216; <u>Albino</u>, 747 F.3d at 1166.
5  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant
6  may move for dismissal under Rule 12(b)(6)."  <u>Albino</u>, 747 F.3d at 1166.  Otherwise, the
7  defendants must produce evidence proving the failure to exhaust, and they are entitled to
8  summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most
9  favorable to the plaintiff, shows he failed to exhaust.  <u>Id</u>.

10      **B.      Summary Judgment Standard**

11      Any party may move for summary judgment, and the Court shall grant summary
12  judgment if the movant shows that there is no genuine dispute as to any material fact and the
13  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks
14  omitted); <u>Albino</u>, 747 F.3d at 1166; <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir.
15  2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be
16  supported by (1) citing to particular parts of materials in the record, including but not limited to
17  depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not
18  establish the presence or absence of a genuine dispute or that the opposing party cannot produce
19  admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The
20  Court may consider other materials in the record not cited to by the parties, although it is not
21  required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237
22  F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017
23  (9th Cir. 2010).

24      The defendants bear the burden of proof in moving for summary judgment for failure to
25  exhaust, <u>Albino</u>, 747 F.3d at 1166, and they must "prove that there was an available
26  administrative remedy, and that the prisoner did not exhaust that available remedy," <u>id.</u> at 1172.
27  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come
28  forward with evidence showing that there is something in his particular case that made the

existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.

### DISCUSSION

### A.    Description of CDCR's Administrative Remedy Process

Plaintiff is a former state prisoner who was at the time of filing the instant complaint in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).

### B.    Summary of Allegations Underlying Plaintiff's Constitutional Claims

As noted above, this case proceeds against Defendants DiLeo, Ulit, and Spaeth, in their individual capacities, for deliberate indifference in violation of the Eighth Amendment, based on Plaintiff's wrist injury. The instant summary judgment motion concerns the claim against Defendant DiLeo, and therefore this summary of Plaintiff's allegations will focus on the allegations involving that Defendant.

///

///

Plaintiff alleges that on July 13, 2013, he broke four bones in his foot during an incident with three correctional officers. (Compl. ¶ 9.) Plaintiff later ended up attempting suicide, and was placed in a Mental Health Crisis Bed at High Desert State Prison ("HDSP"). (Id.)

On July 28, 2013, while at HDSP, Plaintiff had a syncopal episode and fell and broke his wrist. (Id.) Plaintiff was taken to Banner Lassen Medical Center where he was diagnosed with a severely displaced fracture and was told that it would heal in 4 to 6 weeks. (Id.)

On July 31, 2013, Plaintiff was transferred back to KVSP with no crutches or medical appliance for his wrist. (Compl. ¶ 10.) On this same day, Plaintiff was seen by medical and referred to see a doctor. (Id.)

Plaintiff was seen by Defendant DiLeo on August 2, 2013. (Id. at ¶ 11.) Plaintiff alleges that Defendant DiLeo did not administer any treatment for Plaintiff's foot or wrist, but referred Plaintiff to see a specialist. (Id.)

On August 16, 2013, Plaintiff was allegedly seen by Dr. Smith, who diagnosed Plaintiff with three broken metatarsals in his foot, and a severely displaced distal radius fracture of his wrist, noting that the fracture was displaced and angulated. (Compl. ¶ 12.) Dr. Smith recommended surgery as soon as possible. (Id.) On this same day, Defendant DiLeo allegedly referred Plaintiff for a new ortho consultation, rather than sending Plaintiff for immediate surgery. (Id.) Defendant DiLeo also prescribed Plaintiff an after-surgery boot for his foot. (Id.)

On August 23, 2013, Plaintiff was seen by Dr. Alade who noted that Plaintiff had fallen and his wrist had remained untreated. (Compl. ¶ 13.) Dr. Alade recommended that Plaintiff urgently get scheduled for a surgical procedure and told Plaintiff that delay in receiving treatment for the fracture could result in "disability, re-stiffness and [being] unable to appropriately reduce the fracture and anatomical position." (Id.)

On August 27, 2013, Defendant DiLeo approved Plaintiff for surgery, noting there was no reason to delay the surgery. (Compl. ¶ 14.) On September 5, 2013, Plaintiff saw Dr. Alade who again recommended surgery. (Id. at ¶ 15.)

///

///

On September 10, 2013, Defendant DiLeo set Plaintiff's surgery for September 26, 2013, which was nearly eight weeks after Plaintiff fell and broke his wrist. (Id.) Plaintiff had surgery on his wrist on September 26, 2013. (Id.)

Plaintiff fell again and developed an infection in his wrist. (Compl. ¶ 16.) On October 9, 2013, Plaintiff was diagnosed with a comminuted of the distal radius with dorsal angulation and degenerative changes were noted. (Id.) Plaintiff had a second surgery on October 24, 2013. (Id.) On December 10, 2013, Defendant DiLeo recommended a third surgery for Plaintiff. (Id.)

On June 4, 2014, Dr. Smith recommended a shortening osteotomy which Plaintiff had not yet undergone at the time of filing suit. (Compl. ¶ 17.) Plaintiff alleges that he had to endure four surgeries due to Defendant DiLeo allowing his fracture to heal displaced. (Id.)

**C. Discussion**

1. <u>Arguments</u>

There are no material disputed facts with respect to this motion. It is undisputed that there was an available administrative remedy system at Plaintiff's institution, and that Plaintiff was aware of the inmate appeals process and utilized it, filing numerous health care appeals. <u>Albino</u>, 747 F.3d at 1172. The only dispute here is whether any of the appeals that Plaintiff relies upon was sufficient to exhaust Plaintiff's claim against Defendant DiLeo in this case.

Plaintiff alleges that Defendant DiLeo delayed his surgery on his wrist from August 2, 2013 through September 26, 2013, which caused it to heal displaced, and resulted in severe pain and the need for additional surgeries. Plaintiff argues that he sought administrative remedies after his injuries were apparent, noting that he was allegedly advised by non-Defendant Dr. Alade on August 23, 2013 that any delay in receiving treatment could cause harm. Plaintiff cites to six fully-exhausted health care appeals that he contends sufficiently exhausted his administrative remedies for his claim against Defendant DiLeo in this litigation.

For the purposes of this motion, Defendants do not dispute that Plaintiff allegedly was advised by Dr. Alade that treating the fracture late could cause injury, or that Plaintiff filed the six administrative appeals that he relies upon. Defendants argue in opposition that none of these appeals exhausted Plaintiff's claim because they did not address Defendant DiLeo's alleged

conduct at issue in this case, and therefore they failed to provide sufficient notice to prison officials of the claim that he litigates here.

2.    Legal Standard

To meet the PLRA's exhaustion requirement, a plaintiff's administrative appeals must "provide enough information . . . to allow prison officials to take appropriate responsive measures." Griffin v. Arpaio, 557 F.3d 1117, 1121 (9th Cir. 2009) (quoting Johnson v. Testman, 380 F.3d 691, 697 (2nd Cir. 2004)). The primary purpose of the grievance is to alert the prison to the problem and facilitate resolution. Griffin, 557 F.3d at 1120; Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016). "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). The level of detail required to provide adequate notice must comply with the institution's regulations. Jones v. Bock, 549 U.S. 199, 218 (2007). Thus, the California prison system's regulations "define the boundaries of proper exhaustion." Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009).

California's regulations require the inmate to describe the specific issue under appeal and the relief requested.  Cal Code Regs. tit. 15, § 3084.2(a).  The regulations also require for the inmate to list all staff members involved and to describe their involvement. Cal Code Regs. tit. 15, § 3084.2(a)(3).  However, the Ninth Circuit has determined that a grievance may be sufficient even if it fails to name all involved defendants when prison officials decide a procedurally flawed grievance on the merits. See Reyes, 810 F.3d at 657.  In such circumstances, a defendant cannot argue that prison officials were unaware of the defendant or the matter at issue. Id. at 658-59. A prison grievance is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Reyes, 810 F.3d at 659 (quoting Jones, 549 U.S. at 219).

3.    Analysis

It is undisputed that from August 1, 2013 through April 5, 2014, Plaintiff did not exhaust any health care appeals through the third and final level of review. (S. Gates Decl., ECF No. 44-1, ¶ 9 & Ex. A.)  Instead, as noted above, Plaintiff relies on six, later-submitted appeals.

The first, Appeal No. KVSP HC 14035204, was filed on or about May 2, 2014.  (KVSP HC 14035204, ECF No. 45, at 10-11.)  At that time, Plaintiff had undergone three surgeries:  an initial surgery on September 26, 2013 that he alleges was delayed by Defendant DiLeo due to deliberate indifference; a second surgery on October 24, 2013, and a third surgery on December 10, 2013.  (Compl. ¶¶ 15-16.)  In Appeal No. KVSP HC 14035204, Plaintiff identified his complaint as, "EMERGENCY 602 surgery needed, ordered by DR. Smith."  Plaintiff further wrote that the appeal issue was as follows:

> On April 12, 2014, DR Smith ordered surgery for my (L) wrist, shortening osteotomy of ulna.  I am in a great deal of pain #8-9 disabling me.  I last talked to Dr. Delieo on 3/21/14, he said that he didn't need to fill out any more paper work that it was an on going issue.  I talked to Delieo about my anchle-foot that was injured on 7/14/13 and noted on the 7362 the Dr. wraped an ace bandage around it and told me to talk to Orthopaedic Surgeon Dr. Smith when I saw him.  On 5/2/14, Dr. Manasrah said he did not have time to address my medical issues on the 7362(S) wrist-anchle that I have seen the Nurse for.  When I see Dr. Manasrah on 4/24/14 and he said that he would talk with Dr. Delieo on these issues.  On 5/2/14, Dr. Manasrah said that he may have or may not have talked to Dr. Dilieo about my serious medical issues but that he did not have time to address my 7362(s) (L) wrist (R) anchle---foot.

(Id. (errors in original).)  Plaintiff sought the shortening osteotomy of the ulna ordered by Dr. Smith for his wrist, and a surgical consultation recommended by Defendant DiLeo for his ankle and foot.[1]

The First Level Appeal Response, dated June 16, 2014, partially granted Plaintiff's appeal, stating than a review was conducted of Plaintiff's health record, and that Plaintiff had been seen by an orthopedist and based on his recommendations, would be evaluated for further care.  (6/16/14 First Level Appeal Resp., ECF No. 45, at 12-13.)  The Second Level Appeal Response, dated August 8, 2014, discusses Plaintiff's medical treatment for his wrist from February 2014 through early June 2014, including an appointment with Defendant DiLeo regarding left wrist surgery.  (8/8/14 Second Level Appeal Resp., ECF No. 45, at 15-16.)

---

[1] The date that Plaintiff gives in this appeal for the recommendation by Dr. Smith for a shortening osteotomy of the ulna appears inconsistent with the date pleaded in the Complaint, but the Court will consider this potentially disputed fact in Plaintiff's favor in resolving this motion, particularly given his *pro se* status.

Plaintiff's appeal was again partially granted, in that he was evaluated and referred to specialists, and had a pending appointment for surgery. (Id. at 16.) No intervention was found necessary at the Director's Level of Review. (10/14/14 Director's Level Resp., ECF No. 45, at 17-18.)

Plaintiff's second appeal, No. KVSP HC 15036601, was filed on or about October 13, 2015, and concerned a request for pain medication for Plaintiff's wrist in August 2015. (KVSP HC 15036601, ECF No. 45, at 20-25.) Plaintiff generally discussed his wrist injury history in the appeal, such as that his wrist had not healed properly and that he had been delayed in a scheduled surgery, but the appeal did not specifically address Defendant DiLeo. (Id.)

On December 2, 2015, Plaintiff underwent an ORIF radius surgery of the wrist by Dr. Amory. (Compl. ¶ 18.) In the Second Level Appeal Response, dated December 29, 2015, the reviewer discusses that Plaintiff's complaints arose from a wrist fracture with several previous surgeries. (12/29/15 Second Level Appeal Resp., ECF No. 45, at 26-27.) Plaintiff's request for medication was partially granted. (Id.) The Third Level Appeal Response, dated April 11, 2016, discussed the ongoing care for Plaintiff's injury that he received from November 18, 2015 through April 2016, and found no further intervention necessary. (Third Level Appeal Resp., ECF No. 45, at 28-29.)

Plaintiff's third appeal, No. KVSP HC 16036952, also concerned the pain medication issues. (KVSP HC 16036952, ECF No., 45, at 31-35.) The Third Level Appeal Response that Plaintiff submits mainly addressed Plaintiff's medical care and treatment in April, June, and August 2016, and did not address Dr. DiLeo. (Third Level. Appeal Resp., ECF No. 45, at 36-37.)

The fourth appeal, No. KVSP HC 16037174, concerned Plaintiff's request for a stabilizing bar for his wrist brace that was issued to him in March 2016. (KVSP HC 16037174, ECF No. 45, at 39-43.) The Third Level Appeal Response that Plaintiff submits discussed his history of multiple surgeries on the same site of his arm and wrist, "including orthopedic consultation with failed surgical intervention." (10/20/16 Third Level Appeal Resp., ECF No. 45, at 44-46.) The appeal reviewers concluded that no change needed to be made to Plaintiff's wrist brace.

The fifth appeal, No. KVSP HC 16037573, concerned Plaintiff's request for wrist surgery. (KVSP HC 16037573, ECF No. 45, at 48-51.) In summary, Plaintiff wrote that non-Defendant Dr. Amory had approved the shortening osteotomy of the ulna (discussed in Plaintiff's first appeal, No. KVSP HC 14035204, described above) to take place during the ORIF radius surgery. Plaintiff complained that the full surgery had not taken place, and that he was denied a proper wrist brace and bone grown stimulator as well, resulting in problems using his wrist and hand.

Further, in Plaintiff's appeal to the second level, he wrote as follows:

> Had Dr. Dileo not denied appellate treatment on August 2, 2013, appellant would not require any surgery; however, the inability to use his left hand and arm today is unacceptable by any standard, only compounded by the fact it is due to no fault of his own.

(Id. at 51.) The Second Level Appeal Response, dated October 28, 2016, focuses on Plaintiff's request for surgery, and found that there was no medical benefit of the surgery based on Plaintiff's condition, the effect of his condition on his activities of daily living, and potential complications. (10/28/16 Second Level Appeal Resp., ECF No. 45, at 54-55.) The Third Level Appeal Response, dated January 30, 2017, expounds upon the determination that Plaintiff's surgery request was not medically necessary in greater detail, and found that no further intervention was necessary. (1/30/17 Third Level Appeal Resp., ECF No. 44-6, at Ex. E.)

Finally, Plaintiff's sixth appeal, No. KVSP HC 17038301, was filed on or about April 2, 2017, and concerned Plaintiff's request for pain medication for his wrist. (KVSP HC 17038301, ECF No. 45, at 60-63.) This appeal was exhausted at the third level on September 28, 2017, (9/28/17 Third Level Appeal Resp., ECF No. 45, at 64-66), after Plaintiff filed suit in this case by filing a complaint dated April 7, 2017, (ECF No. 1).

Having laid out the appeals in detail, the Court now considers the arguments regarding exhaustion. As an initial matter, because the sixth appeal that Plaintiff seeks to rely upon was still being exhausted when Plaintiff initiated suit here, it cannot have exhausted his administrative remedies for his claim. A prisoner-plaintiff may "initiate litigation in federal

court only after the administrative process ends and leaves his grievances unredressed." Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006). The process was not complete on the sixth appeal before Plaintiff filed suit, but was only completed while litigation was pending.

Turning to the other appeals at issue, Defendant argues that because Plaintiff did not specifically identify Defendant DiLeo and the delayed treatment in 2013 as the subject of an appeal, he has not exhausted his claim. However, Plaintiff contends that the injuries allegedly caused by Defendant DiLeo delaying his surgery in 2013 were not immediately apparent. Although Plaintiff has pleaded that non-defendant Dr. Alade advised him about the potential or risk for injury resulting from the delay in treatment of his wrist fracture, Plaintiff also contends that as a prisoner and a layman, he did not apprehend that injures had in fact resulted for some time.

Here, Plaintiff raises a claim for an ongoing medical issue regarding his allegedly delayed wrist treatment in 2013 and the resulting injuries, and his appeals show that he complained of Defendant DiLeo's role in that matter. Specifically, Plaintiff's first appeal, Appeal No. KVSP HC 14035204, addressed his contentions that he was in severe pain and required additional surgeries to correct his wrist, which he now claims resulted from his wrist healing in a displaced manner due to the initial surgical delay caused by Defendant DiLeo. That appeal also discusses the recommended shortening osteotomy of the ulna that Plaintiff had not yet undergone when his suit was filed, according to his complaint, and that he also contends was required to correct the initial harm caused by Defendant DiLeo's deliberate indifference to his serious medical need in 2013.

The responses from prison officials to this appeal show that Plaintiff's past medical history and medical records were considered along with the course of treatment by Defendant DiLeo and other treatment providers. Although most of Plaintiff's appeal and the responses are addressing injuries to his foot (which is not at issue in this case), there are references to Plaintiff's wrist and arm concerns. Plaintiff noted in his appeal that he had attempted to speak with Defendant DiLeo, who was noted in appeal responses as one of Plaintiff's primary care providers ("PCP"), on March 21, 2014, regarding disabling wrist pain. Plaintiff further

complained that Defendant DiLeo said that Plaintiff did not need to fill out any more paperwork for the ongoing issue. There are also findings that the PCPs had provided proper care to Plaintiff, including a statement at the third level of review that Plaintiff's health records indicated that had been seen and evaluated by treatment providers and specialists "through September 16, 2014," and that his health care was being appropriately managed. (10/14/2014 Third Level Appeal Resp.)

"Prisoners are not required to file and exhaust a separate grievance each time they allegedly receive inadequate medical care for an ongoing condition." Lewis v. Naku, No. CIV-S-07-0090-RRB-DAD-P, 2007 WL 3046013, at *5 (E.D. Cal. Oct. 18, 2007), report and recommendation adopted, 2008 WL 895746 (E.D. Cal. Mar. 31, 2008). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Griffin, 557 F.3d at 1120; accord Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

Here, taking the undisputed evidence in the light most favorable to Plaintiff, he sufficiently articulated his position that his initial delay in wrist surgery in 2013 by Defendant DiLeo had eventually resulted in significant injuries to him. Although Plaintiff did not file a separate appeal naming Defendant DiLeo and challenging the 2013 surgical delay, he complained of inadequate medical care for his wrist-arm injury, and noted that he required surgery to "move on with the healing of his [wrist]." (KVSP HC 14035204, ECF No. 45, at 10.) Plaintiff's first appeal, No. KVSP HC 14035204, described the current condition of his complaints regarding his wrist-arm injuries, his pain, his need for surgery, Dr. DiLeo's role as a treatment provider, Dr. DiLeo's awareness of an ongoing issue with Plaintiff's wrist, and Dr. Dileo's role in surgical treatment approval for Plaintiff. The responses to the appeal show an analysis of Plaintiff's entire health record on this matter, and a finding that he had been provided adequate care prior to that time. The Court finds that this first appeal was sufficient to exhaust available administrative remedies under the circumstances.

Defendants argue that Plaintiff did not plead sufficient facts in his appeals to alert the prison to his complaint about the 2013 surgical delay, but the Court disagrees. A prisoner need

not plead every element of a claim in a grievance, but must simply alert the prison to a problem and give sufficient notice to allow for resolution, to sufficiently exhaust administrative remedies under the PLRA.

Nothing would appear to be gained by requiring Plaintiff to file a separate appeal here. This finding is bolstered by the additional appeals and other records in this case, showing that Plaintiff complained of, and prison officials considered, his contentions that he had multiple reconstructive wrist surgeries, bone graphs, and nerve repair, that he suffered untreated pain, that his wrist had healed in a displaced manner due to surgical delays, and that the issues with his fractured wrist were well-documented in his medical file. There are also specific references to Defendant DiLeo's role in delaying Plaintiff's surgery in 2013. The appeal responses repeatedly indicate that reviews of Plaintiff's overall health records and appeals and were considered, as were interviews and examinations of Plaintiff on his wrist issue. The appeal responses also contain overall findings that Plaintiff's condition was not affecting his activities of daily living, and that he was receiving appropriate medical care and treatments. Given the record here, the Court cannot find that there was any insufficient opportunity for prison officials to address Plaintiff's complaint, correct any errors, or fail to create a sufficient administrative record.

Based on the foregoing, the Court finds that prison officials were sufficiently notified of the claim at issue here, and had an adequate opportunity to resolve it. Therefore, Defendants have not met their burden to show that Plaintiff failed to exhaust available administrative remedies, and summary judgment should be denied.

## IV.

## RECOMMENDATIONS

Accordingly, it is HEREBY RECOMMENDED that Defendants' Motion for Summary Judgment for Defendant DiLeo on Non-Exhaustion Grounds, filed on August 9, 2018, be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate

Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 24, 2019**

UNITED STATES MAGISTRATE JUDGE