1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  JAMES MILLNER,                    )  Case No.: 1:17-cv-00507-SAB (PC)
                                      )
12              Plaintiff,            )
                                      )  **ORDERED THAT PLAINTIFF'S MOTION FOR
13        v.                          )  SUMMARY JUDGMENT BE DENIED, AND
                                      )  DEFENDANTS' MOTION FOR SUMMARY
14  DR. DILEO, et al.,                )  JUDGMENT BE GRANTED**
                                      )
15              Defendants.           )  (ECF Nos. 72, 79)
                                      )
16                                    )
                                      )
17 _____ )

18        Plaintiff James Millner is proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. §

19  1983.  Both parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

20  (ECF No. 55.)

21        Currently before the Court is Plaintiff's motion for summary judgment, filed on June 22, 2020,

22  and Defendants' motion for summary judgment, filed on July 29, 2020.  (ECF No. 79.)

23                                   **I.**

24                          **RELEVANT BACKGROUND**

25        This action is proceeding on Plaintiff's claim against Defendants DiLeo, Ulit, and Spaeth, in

26  their individual capacity, for deliberate indifference in violation of the Eighth Amendment, based on his

27  wrist injury.  (Compl., ECF No. 1.)  Defendants filed an Answer to the Complaint on April 5, 2018.

28  (ECF No. 34.)  A discovery and scheduling order issued on April 6, 2018.  (ECF No. 35.)

                                      1

On August 9, 2018, Defendant DiLeo filed a motion for summary judgment on non-exhaustion grounds.  (ECF No. 44.)  Plaintiff filed an opposition on August 29, 2018, and Defendant filed a reply on September 5, 2018.  (ECF Nos. 45, 46.)

On January 24, 2019, the Court issued Findings and Recommendations recommending that Defendant DiLeo's motion for motion summary judgment on non-exhaustion grounds be denied. (ECF No. 53.)  The Findings and Recommendations were adopted in full on March 6, 2019.  (ECF No. 54.)

On June 5, 2019, the Court amended the discovery and scheduling order.  (ECF No. 56.)

On November 20, 2019, the Court granted Plaintiff's request to stay the action until June 15, 2020, and dispositive motions were to be filed by June 29, 2020.  (ECF No. 67.)

On May 27, 2020, Plaintiff filed a motion for summary judgment.  (ECF No. 68.)

On June 17, 2020, Defendants filed a motion to extend the time to file a dispositive motion and an opposition to Plaintiff's motion for summary judgment.  (ECF No. 70.)  On June 18, 2020, the Court granted Defendants' motion and the deadline was extended to July 29, 2020.  (ECF No. 71.)

On June 22, 2020, Plaintiff filed a second motion for summary judgment and request to withdraw the first motion for summary judgment filed on May 27, 2020.  (ECF No. 72.)

On July 29, 2020, Defendants filed a motion for summary judgment and a separate opposition to Plaintiff's motion for summary judgment.  (ECF Nos. 78, 79.)

On August 24, 2020, Plaintiff filed a reply to Defendants' opposition.  (ECF No. 82.)

On August 31, 2020, Plaintiff filed an opposition to Defendants' motion for summary judgment.  (ECF No. 83.)

On September 3, 2020, the Court granted Defendants' request to extend the time to file a reply to Plaintiff's opposition to October 6, 2020.  (ECF No. 85.)

Defendants filed a reply to Plaintiff's opposition on October 6, 2020.  (ECF No. 87.)

Accordingly, Plaintiff's and Defendants' motions for summary judgment are deemed submitted for review without oral argument.  Local Rule 230(l).

2

## II.

### LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).  It need only draw inferences, however, where there is "evidence in the record...from which a reasonable inference...may be drawn"; the court need not entertain inferences that are unsupported by fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986).  But, "if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits."  Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132,  1136 (9th Cir. 2001) (internal quotations and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A.      Summary of Plaintiff's Complaint**

On July 13, 2013, Plaintiff broke four bones in his foot during an incident with three correctional officers.  (Compl. ¶ 9.)  Plaintiff later ended up attempting suicide and was placed in a Mental Health Crisis Bed at High Desert State Prison ("HDSP").  (Compl. ¶ 9.)

On July 28, 2013, while at HDSP, Plaintiff had a syncopal episode and fell and broke his wrist. (Compl. ¶ 9.)  Plaintiff was taken to Banner Lassen Medical Center where he was diagnosed with a severely displaced fracture and was told that it would heal in 4 to 6 weeks.  (Compl. ¶ 9.)  On July 31, 2013, Plaintiff was transferred back to Kern Valley State Prison ("PVSP") with no crutches or medical appliance for his wrist.  (Compl. ¶ 10.)  On this same day, Plaintiff was seen by medical and referred to see a doctor.  (Compl. ¶ 10.)

Plaintiff was seen by Dr. DiLeo on August 2, 2013.  (Compl. ¶ 11.)  Dr. DiLeo did not administer any treatment for Plaintiff's foot or wrist, but referred Plaintiff to see a specialist.  (Compl. ¶ 11.)  On August 16, 2013, Plaintiff was seen by Dr. Smith, who diagnosed Plaintiff with three broken metatarsals in his foot and a severely displaced distal radius fracture of his wrist noting that the fracture was displaced and angulated.  (Compl. ¶ 12.)  Dr. Smith recommended surgery as soon as possible.  (Compl. ¶ 12.) On this same day, Dr. DiLeo referred Plaintiff for a new ortho consult rather than sending Plaintiff for immediate surgery.  (Compl. ¶ 12.)  Dr. DiLeo also prescribed Plaintiff an after-surgery boot for his foot.  (Compl. ¶ 12.)

On August 23, 2013, Plaintiff was seen by Dr. Alade who noted that Plaintiff had fallen and his wrist had remained untreated.  (Compl. ¶ 13.)  Dr. Alade recommended that Plaintiff urgently get

4

scheduled for a surgical procedure and told Plaintiff that delay in receiving treatment for the fracture could result in "disability, re-stiffness and [being] unable to appropriately reduce the fracture and anatomical position." (Compl. ¶ 13.)  On August 27, 2017, Dr. DiLeo approved Plaintiff for surgery noting there was no reason to delay surgery.  (Compl. ¶ 14.)

On September 5, 2013, Plaintiff saw Dr. Alade who again recommended surgery.  (Compl. ¶ 15.)  On September 10, 2013, Dr. DiLeo set Plaintiff's surgery for September 26, 2013, which was nearly eight weeks after Plaintiff fell and broke his wrist.  (Compl. ¶ 15.)  Plaintiff had surgery on his wrist on September 26, 2013.  (Compl. ¶ 15.)

Plaintiff fell again and developed an infection in his wrist.  (Compl¶ 16.)  On October 9, 2013, Plaintiff was diagnosed with a comminuted of the distal radius with dorsal angulation and degenerative changes were noted.  (Compl. ¶ 16.)  Plaintiff had a second surgery on October 24, 2013.  (Compl. ¶ 16.)  On December 10, 2013, Dr. DiLeo recommended a third surgery for Plaintiff.  (Compl. ¶ 16.)

On June 4, 2014, Dr. Smith recommended a shortening osteotohis which Plaintiff has not yet undergone.  (Compl. ¶ 17.)  Plaintiff alleges that he had to endure four surgeries due to Dr. DiLeo allowing his fracture to heal displaced.  (Compl. ¶ 17.)

On June 6, 2014, Plaintiff saw Dr. Manasrah concerning the fractures to his foot.  (Compl. ¶ 17.)  On June 12, 2014, Dr. Manasrah noted that Plaintiff's foot was supposed to be addressed by was not.  (Compl. ¶ 17.)  Dr. Manasrah sent Plaintiff to see Dr. Smith on June 18, 2014.  (Compl. ¶ 17.)  Dr. Smith noted that at least one of Plaintiff's metatarsals was still healing.  (Compl. ¶ 17.)

On July 29, 2014, Dr. Alade evaluated Plaintiff's wrist and noted that it was severely displaced and that Plaintiff still had a broken metatarsal in his foot more than a year after his injury.  (Compl. 17.)

On December 2, 2015, Plaintiff underwent surgery to redo radial osteotohis with iliac crest bone grafting and plating in his wrist by Dr. Amory.  (Compl. ¶ 18.)  Plaintiff had an x-ray of his wrist on December 10, 2015, which showed there was an abnormal lucency surrounding the proximal most support screw and this was determined to indicate hardware loosening and there was a loose proximal support screw.  (Compl. ¶ 18.)  After the cast was removed from his wrist, Plaintiff was prescribed a wrist brace with a stabilizing bar and bone growth stimulator.  (Compl. ¶ 19.)  Plaintiff received a wrist brace with the stabilizing bar removed and no bone growth stimulator.  (Compl. ¶ 19.)  Plaintiff was

seen by R.N. Relevante who refused to allow Plaintiff to use the stabilizing bar stating that if Plaintiff wanted his wrist to be stabilized Dr. Amory would have put it in a cast.  (Compl. ¶ 19.)  Plaintiff alleges that due to the wrist not receiving proper stabilization and the loose hardware and lack of bone growth stimulator the bone graft did not take.  (Compl. ¶ 19.)  When Plaintiff last saw Dr. Amory, he said the callus was disappearing from the graft and there was a void between the graft and the bone.  (Compl. ¶ 19.)

On August 3, 2016, Plaintiff was seen by Dr. Cogbuehi who told Plaintiff that the Medical Review Board, which was chaired by the Chief Medical Examiner, had denied surgery which was recommended by Dr. Amory on June 25, 2016.  (Compl. ¶ 20.)  Plaintiff states that the denial of the surgery he is permanently disabled and disfigured.  (Compl. ¶ 20.)

Plaintiff filed an administrative appeal and was seen by Dr. Ulit on August 26, 2016.  (Compl. ¶ 21.)  After reviewing Plaintiff's medical history, Dr. Ulit denied Plaintiff's surgery on September 8, 2016, despite the recommendation of another doctor and that Plaintiff's hardware is loosening.  (Compl. ¶ 21.)

Plaintiff appealed the denial of surgery to the second level and Dr. Spaeth agreed with Dr. Ulit and Plaintiff's surgery was again denied.  (Compl. ¶ 22.)

Plaintiff alleges that after multiple surgeries his wrist is still crooked, and he suffers from pain and loss of function causing him to be unable to use his hand for everyday functions.  (Compl. ¶ 13.)

### B.    Applicable Legal Standard

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond

6

to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.  Isolated occurrences of neglect do not rise to the level of an Eighth Amendment violation. O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (quotation marks omitted); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994).

**C.**     **Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on the ground that Defendants Dr. Dileo, Dr. Speath and Dr. Ulit intentionally and deliberately delayed Plaintiff's surgery ordered by a specialist causing great harm to Plaintiff.

1.     Statement of Undisputed Facts

a.     7-27-13 Plaintiff broke his (L) wrist during a fall in his cell at H.D.S.P., see EXH C-1.

b.     7-31-13, Plaintiff returned to K.V.S.P. from H.D.S.P. with no appliances, see EXH C-5. Follow up orders for Ortho in re. (L) wrist with R.F.S. recommendations, see EXH C-3-4.

c.     9-26-13 Dr. Smith performed surgery on Plaintiff's (L) wrist, O.R.I.F. with metallic nails, see EXH C-13.

d.     8-16-13 Specialist Dr. Smith noted he was unable to perform recommended "urgent"

7

surgery in a timely fashion.  See EXH. C-8.

       e.      8-23-13 Dr. DiLeo sent Plaintiff out for another evaluation by specialist DR. Alade who recommended "urgent" O.R.I.F. (L) wrist surgery was needed A.S.A.P. See EXH C-9.

       f.      11-20-13 description of results from an imaging procedure shows (L) wrist healing, stabilized with two pins showing Radius Dorsal Angulation, see EXH C-15.

       g.      11-20-13 description of results from an imaging procedure shows Plaintiff's (L) wrist with the two pins removed from incompletely healed (L) wrist fracture.  That removal of pins increased impaction of radial fracture, Clinical correlation is recommended, see EXH C-16.

       h.      2-12-14 description of results from an imaging procedure shows incompletely healed (L) radius fracture with dorsal angulation, see EXH D-1.

       i.      2-12-14, Dr. Smith recommended surgery, shortening of Plaintiff's (L) Ulna, see EXH D-2.

       j.      7-29-14 Plaintiff was referred to Surgeon Dr. Schaefer who agreed with Ortho. Dr. Alade that Plaintiff's (L) wrist graft healed in a poor position, angled.  Both recommended Plaintiff be referred to hand wrist specialist at U.C. Fresno or Davis, see EXH D-6.

       k.      6-26-15 Plaintiff had consult with Specialist Dr. Amory surgery on Plaintiff's (L) radius fracture showing impending nonunion and collapse, see EXH E-4.

       l.      12-2-15 Plaintiff underwent (L) wrist surgery recommended and performed by Specialist Dr. Amory. See EXH E-6.

       m.      5-16-16 description of results from an imaging procedure shows Plaintiff's (L) Radius fracture not healed, see EXH E-8.

       n.      6-24-16 Specialist Dr. Amory ordered a redo surgery of Plaintiff's (L) radius with shortening of the (L) ulna, see EXH E-9.

       o.      6-28-16 Dr. Ulit put in a Physician Request For Services requesting (L) wrist surgery ordered ty Specialist Dr. Armory on 6-24-16 see EXH E-9.  On 7-7-16 was denied by MARC, see EXH E-10.  Appeal log no. KVSP-HC-16037573 EXH H-1-2-3.

       p.      EXH J-1-24, 10-1-13 to 8-29-18 these are #24 7362 medical request forms.  Plaintiff was asking for pain management to relieve pain and suffering in his (L) fractured wrist.

q.    At P.V.S.P Dr. Romero put a R.F.S. in to see Ortho DR. Reene Smith on 6-27-18 who recommended hardware rerusion (L) distal radius, with iliac bone graft, see EXH M-3.  Dr. Smith was unable to perform surgery as she recommended.

2.    Analysis of Plaintiff's Motion

As an initial matter, contrary to Plaintiff's contention otherwise, when evaluating a motion for summary judgment, the Court "must draw all justifiable inferences in favor of the nonmoving party[.]" Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Therefore, in ruling on Plaintiff's instant motion for summary judgment, the Court draws all reasonable inferences in favor of Defendants as the nonmoving party.

a.    Defendant Dr. DiLeo

Plaintiff contends that Dr. DiLeo intentionally delayed his first surgery.  (Pl's MSJ, ECF No. 72 at 40.)  However, Plaintiff fails to present sufficient evidence to support his claim.  The mere fact that Dr. DiLeo changed his request for physician's services form for a consultation with the on-site specialist from urgent to routine, and surgery was conducted two months after Plaintiff's injury, does not demonstrate deliberate indifference on the part of Dr. DiLeo.  In fact, the undisputed evidence demonstrates that Dr. DiLeo signed off on the change after Registered Nurse Wallace requested modification to maintain compliance standards.  (Declaration of Dr. DiLeo (DiLeo Decl.) ¶ 7, ECF No. 79-4.)  In addition, and of significance, the change from urgent to routine did not affect Plaintiff's request or consultation because the request was approved on August 6, 2013, and Plaintiff was seen by Dr. Smith on August 16, within fourteen days as established for an urgent request.  (DiLeo Decl. ¶ 7.)

Furthermore, Plaintiff has not presented sufficient evidence to demonstrate that Dr. DiLeo delayed his first surgery.  Rather, it is undisputed that Dr. DiLeo is not an orthopedic specialist and could not perform Plaintiff's surgery.  Dr. DiLeo is not responsible for scheduling specialists, and his sole responsibility is to request specialty services, and he did so on several different occasions.  (DiLeo Decl. ¶¶ 1, 7-9, 11-13; Exs. K, M, N, U.)

In addition, Plaintiff fails to present evidence to demonstrate that the two-month wait for his first surgery resulted in further injury or pain.  Dr. Alade advised Plaintiff that treating the fracture late *may* result in disability, stiffness, and an inability to reduce the wrist to anatomical position.  (Pl.'s

Mot. Ex. C-10; DiLeo Decl. Ex. P.)  Plaintiff asserts that Dr. Alade's advisement proved to be true, but he provides no proof.  Plaintiff has failed to produce evidence to show that the two-month wait on his first surgery resulted in further injury or pain.  Rather, Dr. Alade's opinion was just an advisement. In opposition to Plaintiff's motion and in support of their own motion for summary judgment, Defendants have presented the expert testimony of Dr. J. Ohayon who opined that, after reviewing Plaintiff's surgery reports and x-rays after his first surgery, Plaintiff's wrist was restored to anatomical position.  (Declaration of J. Ohayon (Ohayon Decl.). Ex. A, ECF No. 79-1.)  If Plaintiff had been given the opportunity to fully heal, Plaintiff would have a good result.  (Id.)  Thus, there is insufficient evidence to find that the duration between Plaintiff's wrist injury and his first surgery caused further injury.  Moreover, Defendants have presented evidence that Plaintiff's wrist condition continued likely because of infection and difficulty in hearing, unrelated to the advise of Dr. Alade.  (Ohayon Decl. Ex. A, Pl.'s Ex. C-10.)

Plaintiff now presents additional issues to support his claim that Dr. DiLeo acted with deliberate indifference.  Plaintiff argues that Dr. DiLeo again delayed his surgery on February 27, 2015, that Dr. DiLeo, as part of the Medical Authorization Committee, denied his surgery in June 2014, and that Dr. DiLeo was not a doctor, but a nurse practitioner, which contributed to his deliberate indifference.  Plaintiff's additional arguments fail to demonstrate that Dr. DiLeo acted with deliberate indifference to his serious medical needs as a matter of law.

First, Dr. DiLeo's February 27, 2015 note demonstrates only that he signed the order by Dr. Amory as a standard business practice.  (DiLeo Decl. ¶ 14.)  It is standard practice that when an inmate returns from a specialty, as when Plaintiff returned from his consultation with Dr. Amory on February 27, 2015, the inmate must consult with his primary care physician (Dr. DiLeo) within fourteen days.  (DiLeo Decl. ¶ 14.)  Dr. DiLeo signed the order to generate a reminder in the system to keep track of this requirement.  (DiLeo Decl. ¶ 14.)  This order likely occurred because Plaintiff refused an examination upon his return, and Dr. DiLeo was the only doctor around to sign off. (Declaration of Daniel Duan (Duan Opp. Decl.) Ex. 2, ECF No. 78-2; DiLeo Decl. ¶ 14.)  Therefore, Plaintiff has failed to demonstrate that Dr. DiLeo caused any delay, and the February 27, 2015 order had no effect on Plaintiff's surgery.  Second, Plaintiff fails to present evidence relating to the denial of

his June 2014 request for surgery.  In addition, Plaintiff contends that Drs. DiLeo, Spaeth and Ulit were on the Medical Authorization Committee that denied the surgery, but he fails to present evidence that these Defendants were actually on the committee.  Furthermore, the surgery was ultimately approved by the Medical Authorization Review Committee on June 18, 2014.  (Duan Opp'n Decl. Ex. 1.)  Plaintiff has failed to produce undisputed evidence that Dr. DiLeo acted with deliberate indifference to a serious medical need, and his motion for summary judgment against Defendant Dr. DiLeo shall be denied.

　　　　2.　　　Defendants Dr. Ulit and Dr. Spaeth

Plaintiff has failed to demonstrate that Dr. Ulit's denial of Plaintiff's June 28, 2016 request for surgery, and Dr. Spaeth's review and denial of his health care appeal constituted a serious medical need.  Plaintiff has failed to present undisputed evidence that the denial of the surgery caused him further significant injury or unnecessary pain.  Although Plaintiff has submitted documentation demonstrating that he requested services for pain, none of the evidence specifically links the pain to the denial of his June 28, 2016 request for surgery.  Indeed, Defendants Drs. Ulit and Spaeth's medical opinions served to prevent further injury.  (Ulit Decl. ¶ 8; Spaeth Decl. ¶ 12.)  Dr. Renee Smith conducted subsequent exploratory surgery which revealed that Plaintiff's fracture has healed.  (Duan Decl. Ex AA; Ohayon Decl. Ex. A.)  Defendants have submitted expert testimony that despite some pain, Plaintiff's wrist is functional, with no signs of infection or acute impairment, and his condition did not worsen.  It was determined that the shortening procedure, or osteotomy, that Plaintiff requested, is not in his best interest.  (Duan Decl. Ex. AA; Ohayon Decl. Ex. A.)  Rather, a salvage procedure would be the next step, and would likely address Plaintiff's complaints of pain.  (Id.)

In addition, there is simply no evidence that Drs. Ulit and Spaeth's decisions were based on their reasonable medical opinion.  Dr. Ulit denied the requested June 28, 2016 surgery because it would not have a medical benefit.  In rendering his opinion, Dr. Ulit reviewed Plaintiff's medical records, prior wrist surgeries and complications with infection and difficulties healing.  (Ulit Decl. ¶ 9.)  Of note, Plaintiff's June 28, 2016 request for surgery is similar to the surgery he previously received.  (Pl.'s Mot., Ex. E-9.)  Dr. Spaeth reviewed Dr. Ulit's decision, and agreed.  Plaintiff has

alleged nothing more than a difference of opinion among medical professionals, which does not demonstrate deliberate indifference.

Furthermore, it appears that Plaintiff is now alleging a new issue regarding the denial of a bone-growth stimulator to support his claim of deliberate indifference by Drs. Ulit and Spaeth. However, it is undisputed that Plaintiff's medical records reflect that the bone stimulator was only going to be used if Plaintiff's CT scans show healing improvement after his third surgery in 2015. (Pl.'s Mot., Ex G-2.)  The CT scans show no healing.  (Id.)  Furthermore, none of the documents reflect that the bone growth stimulator relates to Plaintiff's claims against Drs. Ulit and Spaeth.

In sum, despite his assertions to the contrary, Plaintiff has not set forth any probative evidence for a reasonable jury to find that Drs. Ulit and Spaeth's decisions denying the requested surgery were medically unacceptable under the circumstances and made in conscious disregard of an excessive risk to plaintiff's health. See Snow v. McDaniel, 681 F.3d at 988; Toguchi v. Chung, 391 F. 3d at 1058; Jackson v. McIntosh, 90 F.3d at 332. That a different physician could/can come out differently on whether the requested June 28, 2016 surgery was/is preferred course of treatment for Plaintiff does not compel a different conclusion. See Snow, 681 F.3d at 987 (difference of opinion between medical professionals concerning what medical care is appropriate does not amount to deliberate indifference); Sanchez v. Vild, 891 F.2d at 242 (same).  Accordingly, Plaintiff's motion for summary judgment against Defendants Drs. Ulit and Spaeth shall be denied.

### D.    Defendants' Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's Eighth Amendment claims arguing the undisputed evidence establishes that they did not acted with deliberate indifference to his medical needs.  Defendant Dr. DiLeo argues that no Eighth Amendment violation occurred stemming from Plaintiff's first wrist surgery in 2013.  Defendants Dr. Speath and Dr. Ulit argue that no Eighth Amendment violation occurred stemming from their review of Plaintiff's request for an additional wrist surgery.

1.      Statement of Undisputed Facts[1],[2]

a.      On July 27, 2018, Plaintiff injured his wrist at HDSP.  (Deposition of Plaintiff (Pl.'s Depo. 20:17-21:8; Declaration of Daniel Duan (Duan Decl.) Ex. Z-1.)

b.       On July 28, 2018, Plaintiff was sent to Banner Lassen Medical Center in Susanville, California, where his wrist was evaluated.  (Pl.'s Depo. 20:17-21:8; DiLeo Decl. ¶ 6.)

c.      Banner Lassen Medical Center diagnosed Plaintiff with a fracture (break) of a bone in his wrist.  (Duan Decl. Ex. Z-1.)

d.      Banner Lassen Medical Center treated Plaintiff's wrist with a splint, and informed him that it would take 4-6 weeks to heal.  In addition, Banner Lessen informed Plaintiff that, if his injury was severe, it may require surgery.  (Duan Decl. Ex. Z-1.)

e.      On July 31, 2013, Plaintiff was transferred from HDSP to KVSP.  (Pl.'s Depo. 25:2-13; DiLeo Decl. ¶ 6.)

f.      Dr. DiLeo conducted his first evaluation of Plaintiff's conditions, including his wrist, on August 2, 2013.  (DiLeo Decl. ¶ 7.)

g.      On August 2, 2013, Dr. DiLeo found that Plaintiff's wrist was properly splinted, stable, and Plaintiff had good circulation in his fingers.  (Id.)

h.      On August 2, 2013, Dr. DiLeo prescribed additional pain medication and concluded additional medical treatment was not needed at the time.  (Id.)

i.      On August 2, 2013, Dr. DiLeo submitted a Physician Request for Service Form, requesting for Plaintiff to be evaluated by an onside orthopedic specialist.  (DiLeo Decl. ¶ 7; Ex. K.)

j.      Dr. DiLeo's request for services was approved on August 6, 2013.  (DiLeo Decl. Ex. K.)

k.      Plaintiff was scheduled to see Dr. Smith on August 16, 2013, within the 14-day compliance period for an urgent request.  (DiLeo Decl. ¶ 7; Pl.'s Depo. 40:10-12; 41:12-14, 18-23.)

---

[1] Hereinafter referred to as "UDF."

[2] The Court has reviewed Defendants' statement of undisputed facts and Plaintiff's response thereto, and finds the following facts undisputed.  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

13

1    l.    On August 16, 2013, Dr. Smith's consult with Plaintiff occurred, and Dr. Smith

2    evaluated Plaintiff's wrist.  As a result, Dr. Smith recommended surgery, which would entail "open

3    reduction internal fixation."  (DiLeo Decl. ¶ 9, Ex. L.)

4    m.    On August 16, 2013, Dr. Smith's clinic informed Dr. DiLeo that Dr. Smith could not

5    perform surgery on Plaintiff in a timely manner.  (DiLeo Decl. ¶ 10.)

6    n.    On August 16, 2013, Dr. DiLeo made a second urgent request for a new referral to

7    another orthopedic specialist for consult and surgery.  (DiLeo Decl. ¶ 10, Exs. M, N; Pl's Depo. 41:23-

8    42:1.)

9    o.    On August 19, 2013, Dr. DiLeo's request was approved.  (DiLeo Decl. ¶¶ 9, 10; Exs.

10   M, N; Pl.'s Depo. 41:24-42:1.)

11   p.    On August 20, 2013, Plaintiff received a chronic care follow up with Dr. DiLeo.

12   (DiLeo Decl. ¶ 10, Ex. O.)

13   q.    By August 20, 2013, Plaintiff was scheduled for an appointment with another

14   orthopedic specialist on August 23, 2013.  (Id.)

15   r.    On August 23, 2013, Dr. Alade evaluated Plaintiff's wrist and recommended surgery,

16   specifically, "reduction and percutaneous pinning as well as open reduction and internal fixation of the

17   fracture."  (DiLeo Decl. ¶ 11, Ex. P.)

18   s.    On August 23, 2013, another physician's request for services was submitted requesting

19   Dr. Alade perform the recommended surgery on Plaintiff's wrist.  (DiLeo Decl. ¶ 11, Ex. Q.)

20   t.    On August 23, 2013, Dr. Alade indicated that he was unable to perform the surgery,

21   and subsequently, recommended a referral to a third facility.  (DiLeo Decl. ¶ 11, Exs. R, S.)

22   u.    On August 23, 2013, Dr. DiLeo cleared Plaintiff for the surgery recommended by Dr.

23   Smith and Dr. Alade.  (DiLeo Decl. ¶ 12, Ex. T.)

24   v.    On September 6, 2013, a request for services form was submitted requesting surgery

25   for Plaintiff.  (DiLeo Decl. Ex. U.)

26   w.    On September 6, 2013, a nursing staff member was able to schedule Plaintiff's surgery

27   with Dr. Smith for September 26, 2013.  (DiLeo Decl. ¶ 13, Ex. U.)

28

14

x.      On September 10, 2013, Dr. DiLeo had another consultation with Plaintiff.  Notes indicated that Plaintiff's surgery was scheduled for September 26, 2013 with Dr. Smith.  (DiLeo Decl. ¶ 13, Ex. V.)

y.      Dr. Smith successfully performed Plaintiff's first wrist surgery on September 26, 2013. (DiLeo Decl. ¶ 13, Ex. W; see also Ohayon Decl. Ex. A.)

z.      Dr. Smith's surgery restored anatomic alignment of Plaintiff's wrist.  (Ohayon Decl. Ex. A.)[3]

aa.     Any delay associated with Plaintiff's first surgery would not have affected his long term outcome.  (Ohayon Decl. Ex. A.)

bb.     Had Plaintiff's surgery had the opportunity to fully heal, Plaintiff would have regained normal function of his wrist.  (Ohayon Decl. Ex. A.)

cc.     Plaintiff required a second surgery on his wrist because he fell.  (Pl.'s Depo. 32:21-33:8; 35:19-36:5; 37:6-37:11.)

dd.     Due to the complications of healing and infection, Plaintiff had multiple wrist surgeries over the span of five years.  (Pl.'s Depo. 63:20-23; 65:2-7; 66:23-25; Ohayon Decl. Ex. A.)

ee.     After Plaintiff's fourth surgery with Dr. Amory, Dr. Amory put in a referral for an "ulnar shortening procedure of the left wrist with a bone grafting of the radial radius" on June 24, 2016.  (Declaration of Dr. W. Ulit (Ulit Decl.) ¶ 6, Ex. B.)

ff.     On June 28, 2016, the physician assistant submitted a physician's request for services form requesting the surgery referred by Dr. Amory.  (Ulit Decl. ¶ 6, Ex. B.)

gg.      The Medical Authorization Committee is a committee at every California prison, and meets as often as necessary to approve or deny requests for medical services not included in the regulations.  The Committee also manages referrals for specialty medical services, reviews and

---

[3] Plaintiff argues that Dr. Ohayon is not an orthopedic specialist and should not be allowed to opine as to Plaintiff's orthopedic issues.  (Pl.'s Opp'n, ECF No. 83 at 126.)  Plaintiff's objection to the testimony of Dr. Ohayon lacks support because she is qualified to offer an expert opinion on Plaintiff's medical treatment.  Dr. Ohayon is a licensed physician in good standing with the State of California, in practice since 1998. (Ohayon Decl. ¶ 1.)  She is also a board certified by the American Board of Surgery, and possess a certificate of added qualification for surgery of the hand.  (Id.)  Accordingly, Plaintiff's objection to the expert testimony by Dr. Ohayon is overruled.

15

1    manages institutional and community hospital bed usage, reviews other available utilization

2    management data, and reports the data to Headquarters.  The Committee decides whether to grant or

3    deny a request for surgery on a majority vote.  (Ulit Decl. ¶ 7.)

4         hh.    As the chief doctor and surgeon, Dr. Spaeth receives the request for services form.  She

5    is not a voting member of the Medical Authorization Committee.  (Declaration of Dr. M. Spaeth

6    (Spaeth Decl.) ¶ 11.)

7         ii.    With requests for medical services not included in the regulation, Dr. Spaeth's only

8    involvement in cases like these is to forward the request to the Committee.  (Speath Decl. ¶ 11.)

9         jj.    On July 7, 2016, the Committee, which included Dr. Ulit and five other medical

10   professionals at KVSP, denied Plaintiff's request for the ulnar-shortening procedure.  (Ulit Decl. ¶ 8,

11   Ex. B; Speath Decl. ¶ 10.)

12        kk.    Dr. Ulit denied the request for the procedure because Plaintiff already had a number of

13   surgeries on his wrist, which were often complicated by infections and a lack of healing.  Plaintiff also

14   appeared to be improving without the need for additional surgical care, and his wrist was functional.

15   (Ulit Decl. ¶ 8.)

16        ll.     Under those circumstances known to him, Dr. Ulit's medical opinion was that

17   Plaintiff's requested surgery, and the risk of further complications, would be medically unacceptable,

18   and could result in further significant injuries to Plaintiff.  (Ulit Decl. ¶ 8.)

19        mm.    The Medical Authorization Committee denied the requested surgery because it would

20   have no medical benefit.  (Ulit Decl. Ex B.)

21        nn.    On August 3, 2016, Plaintiff filed a health care appeal KVSP HC 16037573 to grieve

22   the Medical Authorization Committee's decision to deny his requested surgery.  (Spaeth Decl. Ex. J.)

23        oo.    Dr. Ulit provided the first-level response to KVSP HC 16037573.  (Ulit Decl. ¶ 10.)

24        pp.    On August 28, 2016, Dr. Ulit interviewed and examined Plaintiff.  (Ulit Decl. ¶ 10, Ex.

25   D.)

26        qq.    Dr. Ulit  assessed that Plaintiff had a "left radial fracture, that was non-healing, with

27   angulation deformity of the finger."  Dr. Ulit reiterated the Committee's decision that the surgery

28

16

1    would have no medical benefit, but will continue to investigate and research into his wrist condition.

2    (Ulit Decl. Ex. D.)

3         rr.    Plaintiff appealed KVSP HC 16037573 to the second level.  (Spaeth Decl., Ex. J.)

4         ss.    Dr. Spaeth was assigned as the second level review of Plaintiff's health care appeal,

5    KVSP HC 16037573.  (Spaeth Decl. ¶ 12, Ex. J.)

6         tt.    As a reviewer, Dr. Spaeth typically evaluates whether the proper procedures and

7    policies were followed.  (Spaeth Decl. ¶ 8.)

8         uu.    In reviewing Plaintiff's appeal at the second level, Dr. Spaeth found "no medical

9    evidence" suggesting that the Committee's denial of his requested surgery met the emergency criteria

10   set out in California Code of Regulations, section 3094.9(1).  (Spaeth Decl. ¶ 12, Ex. J.)

11        vv.    Dr. Spaeth concurred with Dr. Ulit's response, and the treatment plan determined by

12   Dr. Ulit.  (Spaeth Decl. ¶ 12, Ex. J.)

13        ww.    Dr. Spaeth found that Plaintiff received appropriate and reasonable treatment based on

14   his symptoms, diagnosis, and CDCR guidelines.  (Spaeth Decl. ¶ 13.)

15        xx.    Plaintiff filed an appeal to the third level of review for KVSP HC 16037573.  (Spaeth

16   Decl., Ex. J.)

17        **C.    Analysis of Defendants' Motion**

18        Defendant Dr. DiLeo argues that he did not delay in requesting the medical services necessary

19   for Plaintiff.  In addition, the evidence demonstrates that any delay in Plaintiff's first surgery did not

20   cause Plaintiff further injury or pain.  Defendants Dr. Ulit and Dr. Spaeth argue that the undisputed

21   evidence demonstrates that Plaintiff's requested surgery was not a serious medical need, and could do

22   more harm than good.  Dr. Ulit denied the requested surgery based on his medical opinion, and Dr.

23   Spaeth reviewed Plaintiff's health care appeal and found no reason to overturn the denial.  In the

24   alternative, Defendants argue that they are entitled to qualified immunity.

25        1.    <u>Defendant Dr. DiLeo</u>

26        Here, it is undisputed that On July 27, 2018, Plaintiff injured his wrist at HDSP.  (UMF a.)  On

27   July 28, 2018, Plaintiff was sent to Banner Lassen Medical Center in Susanville, California, where his

28   wrist was evaluated.  (UMF b.)  Banner Lassen Medical Center diagnosed Plaintiff with a fracture

17

(break) of a bone in his wrist.  (UMF c.)  Banner Lassen Medical Center treated Plaintiff's wrist with a splint, and informed him that it would take 4-6 weeks to heal.  In addition, Banner Lessen informed Plaintiff that, if his injury was severe, it may require surgery.  (UMF d.)  On July 31, 2013, Plaintiff was transferred from HDSP to KVSP.  (UMF e.)  Dr. DiLeo conducted his first evaluation of Plaintiff's conditions, including his wrist, on August 2, 2013.[4]  (UMF f.)  On August 2, 2013, Dr. DiLeo found that Plaintiff's wrist was properly splinted, stable, and Plaintiff had good circulation in his fingers.  (UMF g.)  On August 2, 2013, Dr. DiLeo prescribed additional pain medication and concluded  additional medical treatment was not needed at the time.  (UMF h.)

On August 2, 2013, Dr. DiLeo submitted a Physician Request for Service Form, requesting for Plaintiff to be evaluated by an onside orthopedic specialist.  (UMF i.)  Dr. DiLeo's request for services was approved on August 6, 2013.  (UMF j.)  Plaintiff was scheduled to see Dr. Smith on August 16, 2013, within the 14-day compliance period for an urgent request.  (UMF k.)

On August 16, 2013, Dr. Smith's consult with Plaintiff occurred, and Dr. Smith evaluated Plaintiff's wrist.  As a result, Dr. Smith recommended surgery, which would entail "open reduction internal fixation."  (UMF l.)  On August 16, 2013, Dr. Smith's clinic informed Dr. DiLeo that Dr. Smith could not perform surgery on Plaintiff in a timely manner.  (UMF m.)  On August 16, 2013, Dr. DiLeo made a second urgent request for a new referral to another orthopedic specialist for consult and surgery.  (UMF n.)

On August 19, 2013, Dr. DiLeo's request was approved.  (UMF o.)  On August 20, 2013, Plaintiff received a chronic care follow up with Dr. DiLeo.  (UMF p.)  By August 20, 2013, Plaintiff was scheduled for an appointment with another orthopedic specialist on August 23, 2013.  (UMF q.)

---

[4] Plaintiff argues that Dr. DiLeo is not a doctor, but a physician's assistance, based on the fact that Dr. DiLeo has a "physician and surgeon A" license.  (Pl.'s Opp'n at 28, 76, ECF No. 83.)  However, the Court takes judicial notice of the fact that a type "A" license indicates that the license "is a U.S. or Canadian medical school graduate whose pathway to licensure was based on: 1) THE FLEX. USMLE, OR LMCC written examination and has been licensed less than four years in another state, OR 2) An international medical school graduate whose pathway to licensure was based on the above exams or approved combinations of the NBME, FLEX, and USMLE."  (Defs.' Req. for Judicial Notice, Ex. 1, ECF No. 87.)  See Fed. R. Evid. 201(b)(2); see also Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 20016) (a court may take judicial notice of undisputed matters of public records); Rhee v. Bholat, No. SACV 18-975 PA (JC), 2019 WL 4196064, at *1 (C.D. Cal. June 12, 2019), report and recommendation adopted, 2019 WL 4221082 (C.D. Cal. July 3, 2019) (judicial notice may be taken of summary of license details from the Medical Board of California).  Accordingly, Plaintiff's contention that Dr. DiLeo is a not a doctor is without merit.

1    On August 23, 2013, Dr. Alade evaluated Plaintiff's wrist and recommended surgery,

2  specifically, "reduction and percutaneous pinning as well as open reduction and internal fixation of the

3  fracture." (UMF r.)  On August 23, 2013, another physician's request for services was submitted

4  requesting Dr. Alade perform the recommended surgery on Plaintiff's wrist. (UMF s.)  On August 23,

5  2013, Dr. Alade indicated that he was unable to perform the surgery, and subsequently, recommended

6  a referral to a third facility. (UMF t.)  On August 23, 2013, Dr. DiLeo cleared Plaintiff for the surgery

7  recommended by Dr. Smith and Dr. Alade. (UMF u.)

8    On September 6, 2013, a request for services form was submitted requesting surgery for

9  Plaintiff. (UMF v.)   On September 6, 2013, a nursing staff member was able to schedule Plaintiff's

10  surgery with Dr. Smith for September 26, 2013. (UMF w.)

11    On September 10, 2013, Dr. DiLeo had another consultation with Plaintiff. Notes indicated

12  that Plaintiff's surgery was scheduled for September 26, 2013 with Dr. Smith. (UMF x.)

13    Dr. Smith successfully performed Plaintiff's first wrist surgery on September 26, 2013. (UMF

14  y.) Dr. Smith's surgery restored anatomic alignment of Plaintiff's wrist. (UMV z.)

15    Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is no

16  genuine dispute as to any material fact relating to Plaintiff's claim of deliberate indifference against

17  Defendant Dr. DiLeo. Dr. DiLeo was Plaintiff's primary care provider who could not perform

18  Plaintiff's wrist surgery and did not have control over the scheduling of specialists. (Pl.'s Depo. 40:6-

19  7; 44:10-13; DiLeo Decl. ¶ 8.)  Nonetheless, Plaintiff contends Dr. DiLeo delayed Plaintiff's first wrist

20  surgery. However, there is no dispute that Dr. DiLeo had regular consultations with Plaintiff and

21  consistently monitored Plaintiff's progress. More specifically, from August 2, 2013 (the date Plaintiff

22  first saw Dr. DiLeo) to September 26, 2013 (the date of Plaintiff's first wrist surgery), Dr. DiLeo

23  continuously evaluated Plaintiff, provided necessary treatment, and requested specialist services or

24  made a referral without any delay. In fact, the undisputed evidence belies any claim of delay because

25  Dr. DiLeo acted on the same day or within one business day of receiving information that Plaintiff

26  needed to seek out another orthopedic specialist. (UMF h, i, m, n, s, t, u.)  In addition, Dr. DiLeo did

27  not delay Plaintiff's treatment. Instead, Dr. DiLeo responded reasonably within the context of

28  Plaintiff's primary care physician, and promptly acted when it was necessary for him to do so. The

prompt actions on Defendant Dr. DiLeo's part does not indicate deliberate indifference to Plaintiff's medical needs nor a disregard of a substantial risk of serious harm to Plaintiff.

Furthermore, it is undisputed that any delay associated with Plaintiff's first surgery would not have affected his long term outcome.  (UMF aa.)  Rather, if Plaintiff had the opportunity for his wrist to fully heal after his first wrist surgery, it is undisputed that Plaintiff would have regained normal function of his wrist.  (UMF bb.)   However, the re-injury to Plaintiff's wrist (by an unrelated fall) worsened his wrist condition due to subsequent complications and infections resulting from additional surgeries.  (UMF cc, dd, ee, ff, gg.)  Therefore, even if any initial delay in receiving the first surgery could be attributed to Dr. DiLeo, the delay was not the actual or proximate cause of Plaintiff's wrist complications.  Nor was the alleged delay the actual or proximate cause of any alleged further significant injury or unnecessary pain.

In opposition, Plaintiff relies on the out of circuit holding in Zaya v. Sood, 836 F.3d 800 (7th Cir. 2016), to support his argument that Dr. DiLeo acted with deliberate indifference by disregarding rather than disagreeing the specialists' recommendations.  (Pl.'s Opp'n at 67-68.)  In Zaya, the Seventh Circuit Court of Appeals reversed the district court's grant of summary judgment in favor of the defendant doctor who delayed treatment of the plaintiff's broken wrist. Zaya, 836 F.3d at 803. There, an outside orthopedic surgeon sent specific instructions upon the inmate's return to the prison that he be sent back in three weeks for a follow-up exam and additional x-rays. Id. The defendant doctor waited nearly seven weeks before complying—a four-week delay. Id. The Court of Appeals found that there was "just barely," some evidence to support the finding that defendant doctor disregarded rather than disagreed with the recommended course of treatment. Id.   The defendant doctor acknowledged receiving the specific instructions from the outside orthopedic surgeon that the plaintiff return in three weeks, and despite being fully apprised of the risks associated with delaying treatment, the defendant doctor did nothing for seven weeks.  Id. at 806-07.

In contrast, here, it is undisputed that Dr. DiLeo did not disregard Dr. Smith or Dr. Alade's diagnosis or instructions.  (UMF h, i, m, n, s, t, u.)   Indeed, Plaintiff acknowledges that he received the consults with his surgeons, and his first wrist surgery with Dr. Smith was consisted with the time frame provided by Dr. DiLeo.  (Pl.'s Opp'n at 10-12.)  Plaintiff does not demonstrate or present any

specific evidence that Dr. DiLeo delayed Plaintiff's first wrist surgery.  It is undisputed that both Dr. Smith and Dr. Alade indicated they could not perform the surgery.  (UMF m, t.)  When Dr. DiLeo received the information, he promptly requested services for Plaintiff to see another surgeon for consult and wrist surgery.  The mere fact that the classification of Plaintiff's August 6, 2013 request for services form was changed from urgent to routine does not demonstrate delay.  (Pl.'s Opp'n at 14, 33-34, 39-40.)  Dr. DiLeo declares "[m]y original request was identified as "Urgent" but I agreed to change it to "Routine" after Registered Nurse M. Wallace requested modification to maintain compliance with timing requirements. At that time, I was being conservative in my care of Plaintiff wrist injury, because he had returned from the hospital less than two prior days, where his initial fracture had been operatively aligned. My request for service was approved on August 6, 2013 and Plaintiff was seen by Dr. Smith on August 16, within fourteen days—the compliance time established for an Urgent request."  (DiLeo Decl. ¶ 7.)  Plaintiff fails to present evidence that the change in classification affected his surgery timeline as set forth by Dr. DiLeo.  Plaintiff simply relies on documentation of the time between the day he broke his wrist to the day he received his first wrist surgery.  (Pl.'s Opp'n at 31.)  However, Defendants present evidence that the classification only determines the response time to approve or deny outside patient services.  ((Declaration of Daniel Duan (Duan Reply. Decl.) Ex. A, ECF No. 87-1.)  Pursuant to the California Correctional Health Care Services Health Care Department Manuel Section 3.1.11 which governs "outpatient specialist services," a high or medium priority classification requires that the request for specialty services be processed by the first and second level within 5 days, and for the Statewide Medical Authorization Review Team, or third level, complete their review within 14 calendar days.  (Duan Reply Decl. Ex. A.)  Therefore, the classification label determines only the length of time the prison has to respond to the request.  Indeed, in this instance, Plaintiff received his consult by Dr. Smith on August 16, 2013, within 14 calendar days.  (DiLeo Decl. ¶ 7.)

Plaintiff argues that it is "common knowledge that prison medical treats broken bones urgently to prevent improper healing."  (Pl.'s Opp'n at 9-10, 33, 39.)  However, Plaintiff is not qualified, as a lay witness, to interpret the medical notes and offer his own opinion regarding the consultations with orthopedic surgeons to demonstrate deliberate indifference to a serious medical need.  In Plaintiff's

opinion, his wrist was fully healed prior to his first surgery, and it appears he believes surgery could have been performed at the initial consultations.  (Pl.'s Opp'n at 22, 34, 36, conflating the need to be seen by an orthopedic specialist ASAP with need to send Plaintiff for surgery.)  While Plaintiff may have believed he should have received surgery immediately after his injury, Plaintiff offers no evidence in support of this assertion other than his own unqualified opinion. See Scott v. Harris, 550 U.S. 372, 380–81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Based on the undisputed evidence, it cannot be said that Defendant Dr. DiLeo acted with deliberate indifference to Plaintiff's medical needs, and Dr. DiLeo is entitled to summary judgment as a matter of law.

### 2.    Defendants Dr. Ulit and Dr. Spaeth

Although Plaintiff contends that he suffers pain, he has failed to prove that the denial of his requested surgery by Dr. Ulit, and the subsequent review and denial of his appeal by Dr. Spaeth, caused significant injury, or unnecessarily caused pain to Plaintiff.  (Pl.'s Depo. 95:1-6.)  Rather, the evidence demonstrates otherwise.

It is undisputed that after Plaintiff's fourth surgery with Dr. Amory, Dr. Amory put in a referral for an "ulnar shortening procedure of the left wrist with a bone grafting of the radial radius" on June 24, 2016.  (UMF ee.)  On June 28, 2016, the physician assistant submitted a physician's request for services form requesting the surgery referred by Dr. Amory.  (UMF ff.)

The Medical Authorization Committee is a committee at every California prison, and meets as often as necessary to approve or deny requests for medical services not included in the regulations. The Committee also manages referrals for specialty medical services, reviews and manages institutional and community hospital bed usage, reviews other available utilization management data, and reports the data to Headquarters.  The Committee decides whether to grant or deny a request for surgery on a majority vote.  (UMF gg.)

As the chief doctor and surgeon, Dr. Spaeth receives the request for services form.  She is not a voting member of the Medical Authorization Committee.  (UMF hh.)  With requests for medical

services not included in the regulation, Dr. Spaeth's only involvement in cases like these is to forward the request to the Committee.  (UMF ii.)

On July 7, 2016, the Committee, which included Dr. Ulit and five other medical professionals at KVSP, denied Plaintiff's request for the ulnar-shortening procedure.  (UMF jj.)  Dr. Ulit denied the request for the procedure because Plaintiff already had a number of surgeries on his wrist, which were often complicated by infections and a lack of healing.  Plaintiff also appeared to be improving without the need for additional surgical care, and his wrist was functional.  (UMF kk.)  Under those circumstances known to him, Dr. Ulit's medical opinion was that Plaintiff's requested surgery, and the risk of further complications, would be medically unacceptable, and could result in further significant injuries to Plaintiff.  (UMF ll.)

The Medical Authorization Committee denied the requested surgery because it would have no medical benefit.  (UMF mm.)

On August 3, 2016, Plaintiff filed a health care appeal KVSP HC 16037573 to grieve the Medical Authorization Committee's decision to deny his requested surgery.  (UMF nn.)

Dr. Ulit provided the first-level response to KVSP HC 16037573.  (UMF oo.)  On August 28, 2016, Dr. Ulit interviewed and examined Plaintiff.  (UMF pp.)  Dr. Ulit  assessed that Plaintiff had a "left radial fracture, that was non-healing, with angulation deformity of the finger."  Dr. Ulit reiterated the Committee's decision that the surgery would have no medical benefit, but will continue to investigate and research into his wrist condition.  (UMF qq.)

Plaintiff appealed KVSP HC 16037573 to the second level.  (UMF rr.)  Dr. Spaeth was assigned as the second level review of Plaintiff's health care appeal, KVSP HC 16037573.  (UMF ss.)

As a reviewer, Dr. Spaeth typically evaluates whether the proper procedures and policies were followed.  (UMF tt.)  In reviewing Plaintiff's appeal at the second level, Dr. Spaeth found "no medical evidence" suggesting that the Committee's denial of his requested surgery met the emergency criteria set out in California Code of Regulations, section 3094.9(1).  (UMF uu.)  Dr. Spaeth concurred with Dr. Ulit's response, and the treatment plan determined by Dr. Ulit.  (UMF vv.)  Dr. Spaeth found that Plaintiff received appropriate and reasonable treatment based on his symptoms, diagnosis, and CDCR guidelines.  (UMF ww.)

1    Defendants present expert testimony from Dr. Ohayon who opines that Drs. Ulit and Spaeth's

2 assessments in denying the fifth surgery were within the standard of care.  (Ohayon Decl. Ex. A.)  Dr.

3 Ohayon agreed that Plaintiff's requested surgery would not be in the best interest of Plaintiff because

4 it carried a higher risk of not healing.  (Id.)  Dr. Ohayon further opined that the next steps for

5 Plaintiff's wrist was not to proceed with surgery, but to proceed with "hardware removal."  (Id.)

6    Plaintiff has not demonstrated a serious medical need for the requested fifth surgery.  To the

7 contrary, Dr. Ulit, along with other medical professionals, found that it would not provide a medical

8 benefit, particularly in light of the possible negative consequences.  (Ohayon Decl. Ex. A.)  Indeed,

9 Plaintiff acknowledged that the requested surgery could result in greater complications.  (Pl.'s Depo.

10 95:1-10.)  In not approving further surgery, Dr. Ulit and Dr. Spaeth eliminated further complications,

11 and the possibility of Plaintiff's wrist being completely non-functional.  In fact, subsequent

12 exploratory surgery by Dr. Renee Smith demonstrated that Plaintiff's fracture has healed.  (Duan Decl

13 Ex. AA; Ohayon Decl. Ex. A.)  While Plaintiff has some pain, his wrist is functional, has no signs of

14 infection or acute impairment, and his condition has not worsened.  (Ulit Decl. ¶ 12; Spaeth Decl. ¶

15 10;[5] Ohayon Decl. Ex. A.)  Although Plaintiff may disagree, it was determined that the shortening

16 procedure, or osteotomy, was not in Plaintiff's best medical interest.  (Duan Decl. Ex. AA; Ohayon

17 Decl. Ex. A.)  Rather, a salvage procedure would be the next step, and would likely address Plaintiff's

18 complaints of pain.  (Duan Decl. Ex. AA; Ohayon Decl. Ex. A.)

19    Furthermore, the medical opinions of Drs. Ulit and Spaeth do not establish deliberate

20 indifference.  It is well established that "a mere difference of medical opinion ... [is] insufficient, as a

21 matter of law, to establish deliberate indifference."  Toguchi v. Chung, 391 F.3d at 1058 (alterations in

22 original) (citation omitted). This rule applies whether the difference is between the medical

23 professionals and a prisoner or two or more medical professionals. Hamby v. Hammond, 821 F.3d

24 1085, 1092 (9th Cir. 2016) (citation omitted).  In an appropriate case, however, a prisoner may

25 demonstrate deliberate indifference based on a difference of medical opinion, but must show that "the

26

27 _____

28 [5] Dr. Spaeth noted that there was no evidence that the pain Plaintiff reported interfered with his daily activities.  (Spaeth Decl. ¶ 13.)

1  course of treatment the doctors chose was medically unacceptable under the circumstances," and that
2  they "chose this course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson
3  v. McIntosh, 90 F.3d at 332 (citations omitted).

4      Here, Plaintiff's claims against Drs. Ulit and Spaeth amount to nothing more than differences
5  of medical opinion. Plaintiff contends that Dr. Amory recommended additional surgery to eliminate
6  his pain. (Pl.'s Depo. 95:1-5.) However, subsequent medical professionals reached a different
7  opinion, and surgery was not recommended. Plaintiff thereafter continued to receive non-surgical
8  treatment, and his wrist was improving. (Ulit Decl. ¶¶ 11-12, Exs. F, G.) Consequently, Plaintiff has
9  proven nothing more than a difference of medical opinion regarding his treatment, which does not
10  demonstrate deliberate indifference.

11     In his opposition, Plaintiff relies on the Ninth Circuit's decision in Snow v. McDaniel, 618
12  F.3d 978, to support his claim that Defendants Drs. Ulit and Spaeth were deliberately indifference.
13  However, Snow is distinguishable. There, hip surgery had been recommended by two specialists and
14  the inmate's treating physician, but the prison denied the request several different times. Snow, 681
15  F.3d at 986. In denying the requests, no medical reasons were provided, and there was evidence
16  which supported the inference that the prison ignored the recommendations for reasons unrelated to
17  the inmate's medical needs. Id. at 987. Here, in contrast to Snow, Drs. Ulit and Spaeth did not fail to
18  treat Plaintiff. In addition, unlike Snow, where all Defendants agreed on the recommended surgery,
19  Drs. Ulit and Spaeth along with the other medical professionals on the Medical Authorization
20  Committee disagreed with Dr. Amory's surgery recommendation. (Ulit Decl. ¶¶ 6-7, 9-10, Ex. B;
21  Spaeth Decl. ¶¶ 10, 13; Ohayon Decl. Ex A, ECF No. 79.) Thereafter, Dr. Renee Smith also disagreed
22  with the requested procedure. (Duan Decl. Ex. AA.) Moreover, unlike Snow, Dr. Ulit provided
23  medical reasons to support his denial, and expert testimony supports his decision. (Ulit Decl.¶ 9;
24  Ohayon Decl. Ex. A.) There is no evidence that Drs. Ulit or Spaeth denied the surgery based on
25  anything but their medical opinions.[6]

[6] In his opposition, Plaintiff mistakenly argues that his surgery was "pre-approved," entitling him to such surgery. (Pl.'s Opp'n at 23, 26.) However, there is no evidence that the surgery was pre-approved, and Plaintiff has pointed to only Dr. Amory's recommendations. (Id. at 23.) Moreover, section 3.1.11 of the Health Care Department Operations Manual does

In addition, it is undisputed that Dr. Ulit provided a treatment plan after the Committee denied Plaintiff's request for surgery.  It is further undisputed and Plaintiff acknowledges that he continued to receive medical care, including consultations and subsequent surgery with Dr. Renee Smith.  Plaintiff also continues to receive medical care from Dr. Harf.  (Pl.'s Opp'n at 17-18, 61-62.)  Thus, the undisputed evidence demonstrates that Defendants Drs. Ulit and Spaeth were not deliberately indifferent in allegedly failing to treat Plaintiff.

Lastly, Plaintiff's reliance on Zaya v. Sood is also inapposite as to Defendants Drs. Ulit and Spaeth.  836 F.3d at 800; Pl.'s Opp'n at 68, 91-92.)  Here, unlike in Zaya, where primary care physician failed to provide a basis for his medical opinion, Dr. Ulit and other members of the Medical Authorization Committee (which consists of medical professionals, doctors, and surgeons) provided a valid basis for their medical opinion.  (Ulit Decl. ¶¶ 6-7, 9-10, Ex. B; Spaeth Decl. ¶¶ 10, 13; Ohayon Decl. Ex A; Duan MSJ Decl. Ex. AA.)  Further, in contrast to Zaya, this case does not involve a disagreement among a single primary care physician and a specialist regarding a follow-up consultation.  Here, the difference in medical opinion was between one specialist and a team of other medical professionals regarding the need for an additional procedure.  Moreover, and distinguishable from Zaya, where the primary care physician did not properly follow up with the inmate, Plaintiff continued to receive care.  While Plaintiff may not have received the exact type of care he desired, there is no showing that Drs. Ulit and Spaeth acted with deliberate indifference in denying his requested surgery, and Defendants are entitled to summary judgment.

3.    Qualified Immunity

Because the Court has found that Defendants' are entitled to summary judgment on the merits of the claims, the Court need not determine whether they are entitled to qualified immunity.

///

///

///

not provide for "pre-approved surgery." (Duan Reply Decl. Ex A.)  With the exception of an emergency health request, not present here, section 3.1.11(c)(2) requires the request proceed through the authorization process.  (Id.)

1

## IV.

2

## CONCLUSION AND ORDER

3    Based on the foregoing, it is HEREBY ORDERED that:

4    1.    Plaintiff's motion for summary judgment (ECF No. 68) filed on May 27, 2020, is

5          denied as rendered moot by Plaintiff's request to withdraw it;

6    2.    Plaintiff's motion for summary judgment (ECF No. 72) filed on June 22, 2020, is

7          denied;

8    3.    Defendants' motion for summary judgment (ECF No. 79) filed on July 29, 2020, is

9          granted; and

10   4.    Judgment shall be entered in favor of Defendants.

11

12   IT IS SO ORDERED.

13   Dated:   **January 6, 2021**

14                                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28